SOCIETE ANONYME DE LA DISTILLERIE DE LA LIQUEUR BENEDICTINE DE L'ABBAYE DE FECAMP *v.* WESTERN DISTILLING CO.

*(Circuit Court, E. D. Missouri, E. D.   September 8, 1890.)*

TRADE-MARKS—FALSE REPRESENTATIONS—INJUNCTION.

The fact that complainant, the manufacturer of a cordial made according to a recipe obtained from the Benedictine monks, attaches to the bottles labels and advertisements bearing Latin and French phrases, which translated are, "Genuine Benedictine Liquor of the Benedictine Monks of the Abbey of Fecamp," does not preclude relief against one who manufactures and puts upon the market a cordial in such form and guise as to clearly indicate that it is the identical article sold by complainant; such phrases not being representations that the Benedictine monks are still engaged in its manufacture at Fecamp, but that it originated with them, especially where one of the advertisments shows that the cordial is manufactured by complainant, a corporation.

In Equity.   On bill for injunction.

*Chas. Bulkley Hubbell* and *Frederick N. Judson,* for complainant.

*Rassieur & Schnurmacher,* for defendant.

THAYER, J.   This case, upon the evidence, presents the following state of facts:   The complainant is a French corporation, located at Fecamp, Normandy, in France, and is engaged in the manufacture and sale of a cordial or liquor called "Benedictine," for which there is a large demand in the United States, as well as in France and in many other foreign countries.   The liquor is made of a decoction of herbs that grow on the heights of Normandy and the best cognac, according to a secret recipe, formerly belonging to the order of Benedictine monks, who founded and for several centuries maintained an abbey at Fecamp.   Complainant's distillery for the manufacture of the cordial is located on lands formerly belonging to the Benedictine monks, appurtenant to the abbey in question.   After the dissolution of the monastic orders and the sequestration of their property by the first republic of France, the book containing the recipe for Benedictine, as well as many other recipes, by gift of one of the monks of the abbey of Fecamp, passed into the possession of the maternal grandfather of A. Le Grand, Sr., the present *directeur general* of the complainant company.   Some time prior to the year 1863 the book, by inheritance, became the property of Mr. Le Grand himself, and in that year he began the manufacture of the liquor or cordial at Fecamp, according to the formula of the monks.   The formula has been kept secret in his family, and is known only to Mr. Le Grand and his two sons, who are subdirectors of the complainant.   Since the year 1866 the liquor has been sold under the name of "Benedictine," and is widely known by that name, and has been put on the market in peculiar shaped bottles, provided with labels, seals, wrappers, etc., of a distinctive character; the labels, seals, etc., so in use have also been filed and registered in the proper offices as a trade-mark, both in France and in this country.   Mr. Le Grand appears to have conducted the business of manufacturing and selling Benedictine at Fecamp until 1876, when a corpora-

tion (the present complainant) was duly organized under the laws of France to continue the manufacture at the same place. To the company so organized Le Grand assigned the formula for concocting Benedictine, all trade-marks, labels, real estate, and property of every kind used in connection with the manufacture, receiving in exchange therefor the capital stock of the company, and becoming its director general, which position he still holds. The business in question has in the mean time grown to large porportions, and has become very lucrative; the annual profits ranging from 350,000 to 500,000 francs. Shortly before the filing of the bill in this case, the Western Distilling Company began the manufacture and sale of a cordial called "Benedictine," at the city of St. Louis, Mo. For the obvious purpose of promoting the sale of the article, the distilling company caused it to be put up and placed on the market in bottles with labels, seals, and wrappers, all made in exact imitation of those in use by the complainant for putting up Benedictine by it manufactured. Even a *fac simile* of the signature of A. Le Grand, *aine*, and the initials of his name A. L. under the words "*Le Directeur*," both of which appear on labels used by the complainant, were appropriated by the distilling company, for use on the same labels on its own bottles. It is unnecessary, however, to go into further details. It is sufficient to say that the cordial manufactured by the defendant, and by it termed "Benedictine," was placed on the market in such guise that it could not be distinguished by careful inspection from the cordial prepared by the complainant, and that it was also put up in such form as to indicate clearly that it was manufactured at Fecamp, France, and not in this country. Under the circumstances, but one conclusion is admissible; and that is that the defendant intended, by putting up its cordial in the manner described, to deceive the public, and to deprive the complainant of a portion of its patronage by representing its own goods to have been manufactured by the complainant. In the light of these facts it is not very material whether complainant has an exclusive property in the word "Benedictine," as applied to its cordial, or has or has not a technical trade-mark, entitling it to protection under treaty stipulations, as in any event the law will not permit a person to disguise goods of his own production as those of some other manufacturer, for the purpose of purloining the latter's custom and deceiving the public, although he may make use of no words or symbols except such as, standing by themselves, and in an ordinary relation, are common property. *McLean* v. *Fleming,* 96 U. S. 254; *Avery* v. *Meikle,* 81 Ky. 73; *Croft* v. *Day,* 7 Beav. 84; *Newman* v. *Alvord,* 51 N. Y. 192; *Wotherspoon* v. *Currie,* L. R. 5 H. L. 512; *Sawyer* v. *Horn,* 4 Hughes, (U. S.) 239; *Carson* v. *Ury,* 39 Fed. Rep. 779. Yet, this is precisely what the distilling company seems to have done, and still threatens to do. It could have had no possible motive for representing its goods to be of foreign manufacture, and for adopting the same dress, down to the minutest detail, that complainant's goods have long worn, unless it was to profit by the reputation of complainant's goods, and enable it to make a successful inroad upon complainant's trade.

According to the view which the court takes of the case, the only question deserving of serious consideration, is whether the complainant is not precluded from obtaining equitable relief by certain representations which it makes to the public concerning the manufacture of its own liquor. It is claimed by the defendant that the *societe* by its labels, seals, advertisements, etc., represents that the Benedictine by it sold is manufactured by Benedictine monks; and, if this contention is sustained by the evidence, it must be conceded that complainant is without right to equitable relief. *Medicine Co.* v. *Wood*, 108 U. S. 220, 2 Sup. Ct. Rep. 436; *Siegert* v. *Abbott*, 61 Md. 286. The contention is based on the fact that the Latin words "*Liquor Monachorum Benedictinorum Abbatiæ Fiscanensis*" appear on a label pasted around the neck of all of the *societe's* bottles; that an advertisement printed in French is also wrapped up with each bottle, with the following heading: "*Veritable Benedictine Liqueur des Moines Benedictins de L'Abbaye De Fecamp;*" and that the wax seal on the cork of each bottle has impressed thereon the figure of a monk, and that one of the labels on the body of the bottle bears the cabalistic letters "D. O. M." I attach no weight to the suggestion of counsel that the pictures of complainant's manufactory, distributed by it by way of advertisement, represent the manufacture to be carried on in an abbey, for the reason that no one liable to become a purchaser of Benedictine would be apt to mistake a modern distillery or workshop, such as the cut represents, as the abode of a religious order. I think it manifest that the language above quoted from the label and the advertisement falls short of a representation that it is the order of Benedictine monks who are now engaged at Fecamp in the manufacture and sale of Benedictine, even if the literal translation of the language be adopted, for which counsel contend, and even if the court disregards the idiomatic meaning of the particle "*des*," which those familiar with the French language assert should be given to it, when used as in the above-mentioned advertisement. If the phrase found in the advertisement be read as follows: "Genuine Benedictine Liquor of the Benedictine Monks of the Abbey of Fecamp," that does not necessarily imply that the liquor was made by, or that it belongs to the Benedictine monks of the abbey of Fecamp, because one of the approved and ordinary uses of the preposition "of" is to indicate origin, and sometimes to indicate use, as well as to signify possession or ownership. Hence, without giving any unusual meaning to the words, a person reading the label and advertisement in question might understand the representation to be that the article referred to is a liquor of the very same kind that was originally compounded by the Benedictine monks of the abbey of Fecamp, or that it was the genuine article at some time or other used by the monks of that abbey, and distinguished for such use. Evidently the phrase, "Liquor of the Benedictine Monks," etc., is one that may be interpreted in several ways without doing violence to the ordinary use of language; and I am of the opinion that people of ordinary intelligence would generally regard it as a representation that the liquor in question is compounded according to a formula invented or heretofore used by the monks of the abbey of Fecamp,

rather than as a representation that the monks of that abbey are still engaged in the manufacture, and that the article is of their production. This opinion is reinforced by other representations made by complainant's labels and advertisements.   One of the advertisements clearly shows that Benedictine is manufactured at Fecamp, France, by the complainant, and that it is a French corporation with a capital of 2,500,000 francs, and has commercial agencies in various countries.   One of the labels invariably placed on complainant's bottles, as heretofore mentioned, has a *fac simile* of the signature of "A. Le Grand, *aine;*" another bears the initials of his name under the words "*Le Directeur;*" and a third label states, in substance, that every bottle of genuine Benedictine put on the market bears a *fac simile* of the signature of "A. Le Grand, *aine, Directeur General.*" The words "*Directeur General*" certainly do not suggest the head of a religious order, but rather the manager of a trading or manufacturing establishment.   In view of these facts it seems evident that no person of average intelligence, who, with ordinary care, consults complainant's labels, advertisements, etc., with a view of ascertaining who is the manufacturer of Benedictine, would be liable to conclude that it was manufactured by a society of monks, and buy the article on the strength of such belief.

In support of the same defense now under consideration it is further suggested that Benedictine is not made, according to a recipe of the monks, from herbs grown on the fallows of Normandy, and that the representation to that effect in complainant's advertisements is false.   It is no doubt true that the Benedictine put upon the market by defendant is not made according to such recipe, or of such herbs, although its circulars contain a representation substantially to that effect.   But there is no evidence in the case that the representation is false as applied to the foreign article actually manufactured at Fecamp; on the contrary, there is in the record the statement of A. Le Grand, Sr., supported by strong corroborative facts, that the representation is in every respect true; and the court would not be warranted in rejecting his testimony merely because Le Grand refused, on his cross-examination, to publish the formula.

Finally, it is urged that complainant is guilty of such misrepresentation as precludes equitable relief, because the fact is not disclosed by its labels or wrappers that the business conducted by A. Le Grand, Sr., up to 1876 has since then been conducted by a corporation,—the present complainant.   This contention appears to the court to be without merit, for the following reasons:   One of the advertisements of Benedictine, circulated by the complainant, does show, as before noted, that the liquor is manufactured at Fecamp, by a business corporation,—the "*Societe Anonyme de la Distillerie,*" etc.   And with respect to the labels and wrappers on the bottles, in use prior to 1876 and since, it may be said that they never did represent Mr. Le Grand, Sr., to be the sole party in interest in the manufacture of Benedictine.   The substantial representation conveyed by the labels on this point has always been that Le Grand was *directeur* or *directeur general* of some concern (whether partnership or

corporation is not stated) that was engaged at Fecamp in the manufacture of Benedictine. Furthermore, the change that took place in the business in 1876 was of such character that no dealer in Benedictine would probably regard it as of any importance. Mr. Le Grand retained the ownership of the bulk of the stock of the company, and became its executive head or manager. The liquor was thereafter produced under the supervision of the former manufacturer, and mainly for his profit, at the same place, at the same distillery, and according to the same formula. I fail to discover in the last contention of defendant's counsel any valid ground for refusing equitable relief. Therefore my conclusion upon the whole case is that defendant should be restrained from making use of complainant's labels, wrappers, circulars, etc., in the manner heretofore done, and that it should be compelled to account for whatever profits it has realized from such unlawful use. It will be so ordered.