A. BAUER & CO. v. LA SOCIÉTÉ ANONYME DE LA DISTILLERIE DE LA LIQUEUR BÉNÉDICTINE DE L'ABBAYE DE FÉCAMP.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

No. 892.

1. UNFAIR COMPETITION—IMITATION OF PACKAGES—INTENT.

While no manufacturer of an article has a monopoly of form of package, or of color or of shape of letters, or of geographical names, he is yet entitled to protection against one who imitates his packages in any or all of such matters with the intent to deceive purchasers into buying his goods as those so imitated in dress, and in such manner as to render such deceit probable.

2. TRADE-MARKS—"BENEDICTINE"—UNFAIR COMPETITION.

"Bénédictine" is a cordial made for 300 years by the Bénédictine Monks at their monastery at Fécamp in Normandy, France. Their monastery having been destroyed and the monks driven out during the French Revolution, the recipe for the cordial, which was secret, descended by inheritance to one who in 1863 commenced its manufacture and sale commercially on a part of lands formerly held by the monks, then giving it the name of Bénédictine, by which it has become well known and attained a large sale. It has been put up since that time in a peculiar shaped bottle, having thereon distinctive labels and seals. The name was registered as a trade-mark in the United States in 1876, as were also the labels. Such person afterward organized the complainant corporation, to which he transferred the business and in which he became the principal stockholder. Defendant about 1898 placed on the market a cordial in bottles of the same sizes and of nearly the exact shape of those of complainant, having labels and seals similarly placed thereon and of similar appearance, having printed thereon the name "Liqueur de St. Benedict" and the word "St. Benedict" blown in the bottle in the place of the word "Bénédictine" in complainant's bottles. The printed matter on the labels was not the same, but was in French, although the article was made in Chicago. Held, that it was evidently defendant's intention to palm off its goods as those of complainant, and

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

that complainant was entitled to an injunction restraining the use of the word "St. Benedict" as an infringement of its trade-mark, and of the bottles and labels described.

3. SAME—NECESSITY OF SHOWING ASSIGNMENT.

The name "Bénédictine" as applied to an article so ancient and of such unchanging quality has come to designate the quality and place of manufacture rather than the name of the manufacturer, and it is unnecessary for complainant, in order to be entitled to the protection of the trade-mark, to indicate in connection with its use that it claims as assignee, there having been no change in the place of manufacture or in the formula, and substantially none in the manufacturer.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

"Bénédictine is a cordial or liqueur resembling Chartreuse, distilled at Fécamp in Normandy. It was originally prepared by the Bénédictine Monks, but since the French Revolution has been made by a secular company." Cent. Dict. An historical account of the origin of this cordial is given by Judge Taft in the case of Société Anonyme De La Distillerie De La Bénédictine v. Micalovitch, Fletcher & Co., 36 Alb. Law J. 364, as follows: "At Fécamp in Normandy, France, the Bénédictine Monks had a monastery for several centuries before the French Revolution. They invented a liqueur or cordial made from cognac and a decoction of an herb growing wild in that country, and other ingredients, and made it for their own use. They preserved the recipe as a secret in a book of recipes. In 1792 the abbey of Fécamp was destroyed and the monks driven out. A. Legrand, Senior of Fécamp, one of whose ancestors was an attorney general of the abbey, came into possession of the book of recipes by inheritance. In 1863 he began the manufacture of the liqueur in question on an estate which was formerly part of the lands of the abbey, and where now is situated a museum of relics of the abbey. The recipe of the monks was followed exactly in the manufacture of the liqueur. The recipe is preserved as a secret known only to Legrand Aine, and two sons in business with him. In 1863 the liqueur first became an article of commerce, and then for the first time was it given the name 'Bénédictine.'" M. Legrand Aine continued the business from 1863 until 1876, when he made over to the complainant corporation then formed by him the plant, business, and good will. The fact is stated in the case above referred to as follows: "In 1876 he (Legrand) organized a corporation which was called the 'Société Anonyme de la Distillerie de la Bénédictine Liqueur de l'Abbaye de Fécamp,' to which he conveyed all the property used for the manufacture of this liqueur, together with his trade-marks, business assets, and good will, and received therefor 4,500 shares out of the 5,000 shares of the company. He became sole director of the company." This corporation has since continued and now carries on the business at the same place and with the same plant. The article is widely known and sold throughout Europe and the United States, Canada, and South America; its sale in the United States amounting to from five to seven thousand cases annually, and in the state of Illinois to about seven hundred and forty cases annually. In 1863 M. Legrand selected a peculiarly shaped bottle to contain the cordial, a black glass bottle of ungainly shape, having a bowl-shaped body and long neck, which is peculiar to this business and has become familiarly known to the trade as a container of this cordial. They come in two sizes, quarts and pints. On one face of the bottle is blown the word "Bénédictine," with a cross at either end. Below it is placed a light brown label with the following printing thereon: "Toutes les Bouteilles de Bénédictine, Liqueur de l'Ancienne Abbaye de Fécamp doivent avoir au bas une étiquette portant le fac-simile de la signature de A. Legrand Aîné. La plus large ligature du plomb qui entoure le col doit porter les marques et inscriptions suivantes;* Veritable† Bénédictine.* Lebouchon devra étre marqué tout autour de: Véritable Liqueur Bénédictine.* Enfin le dessous du bouchon portera: D. O. M.†" Upon bottles exported to the United States and Canada underneath the label noted is an oblong label with blue ground, having thereon the words

"Sole Agent for the United States of America and Canada. Henry E. Gourd, New York"; the words "Henry E. Gourd" being in gold letters, the others being in white letters. On the reverse face of the bottle on the shoulder is blown a figure somewhat like a horseshoe, within which is a seal of wax of the color of a bright vermilion, and upon it there is a mitre with a crosier, and, below, three mitres. Below this, and upon the face of the bottle, is a circular light brown label having thereon the letters "D. O. M.," below which is a cross, and beneath that the words "Le Directeur, A. L." Beneath this label is another label of similar color, having thereon the inscription "Véritable Liqueur Bénédictine, Marques déposées en France et à l'Etranger," and below this a fac-simile of the signature of A. Legrand Aine. Upon the neck of the bottle are two labels of like color with the others, one containing the words "Liquor. Monachorum Benedictinorum. Abbatiae Fiscanensis"; the other placed immediately below has thereon the words, in English, "Imported from Fécamp (France)." The cork and mouth of the bottle are covered with a tan leather-skin capsule upon which is pasted a label of like color with the others, bearing the words "Registered Trade-Marks"; a wax seal of like color with the other seal being upon this capsule and over the mouth of the bottle. A leaden band passes around the neck of the bottle and over the capsule, and is attached under the seal on the shoulder of the bottle. The trade-mark "Bénédictine" was registered by M. Legrand in September, 1876, in the United States patent office pursuant to the act of congress, as were also the other labels which have been described. The appellant, A. Bauer & Co., is a corporation of the state of Illinois, engaged in the general wholesale and retail liquor business in the city of Chicago. Prior to the filing of the bill it placed on the market at the city of Chicago and sold a cordial in bottles of the precise sizes and nearly the exact shape of the bottle of the appellee, having the imitation of a horeshoe blown in the bottle upon its shoulder as in the appellee's bottle, and a red seal of wax therein resembling the seal of the complainant, with the letters around it "Liqueur De St. Benedict." Below it is a circular label of like color and form to that of the appellee's label, having thereon the words and letters across the face of it "A. B. C. Liqueur de St. Benedict," and upon the label a red cross. Beneath that label is another label of like color, having the words printed thereon "Liqueur De St. Benedict." Around the neck of the bottle are two labels of like color with the appellee's labels, the upper one having the inscription "Toutes les Bouteilles de Liqueur St. Benedict doivent avoir au bas une etiquette portant le facsimile de la signatur de Mossieur," with the fac-simile signature "The Tucker Hardy Co.," the latter being the department name given to a branch of A. Bauer & Co. Underneath that label is a smaller label of like color, having thereon the words "Fabriqué en Etats Unis." Upon appellant's bottle there is a band of lead underneath the rim of the neck, stretching across the cork. The cork is covered by a capsule made of paper, and, in place of the leaden ligature in the appellee's bottle, a substitute ribbon of leaden color passes over the capsule and is attached under the seal on the shoulder of the bottle. The mouth of the bottle is also covered with a wax seal of similar color to that of the appellee's, and the name "St. Benedict" is blown upon the face of the bottle. The court below decreed for the complainant, appellee here, enjoining the use of the term "Liqueur St. Benedict" or "St. Benedict," and the use of the bottles and of the marks on the labels specified; which decree is brought here by appeal for review.

F. H. Trude (John Stuart Roberts, of counsel), for appellant.

Francis M. Charlton and William M. Copeland, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). We have so often spoken to the subject of trade-mark and of unfair trade, and to the principle by which courts of equity are guided in restraining one from palming off his goods as the goods of another,

that it is quite unnecessary at this time to go over the ground at length. It is true that no one has a monopoly of form, nor has he a monopoly of color, of the shape of the letters, or geographical names, or of his own name, but one may not, by means lawful in themselves when devoted to a lawful end, perpetrate a fraud upon the public, or infringe the rights of another. Charles E. Hires Co. v. Consumers' Co., 41 C. C. A. 71, 100 Fed. 809. It would be impeachment of intelligence to say that here there was not design to market the appellant's goods as the goods of the appellee. There is such marked similarity in the shape of the peculiar bottle, in the character and arrangement of the labels, the letterpress, the use of the French language of the letterpress upon an article manufactured in the city of Chicago, in the wax seals, in the capsules covering the corks and the means of fastening them, in the name "Bénédictine" and "St. Benedict" blown in the bottles, that it is clear not only that there was design to deceive but also that deception is most probable. The trade-mark "Bénédictine" has been sustained in able and elaborate opinions in 1887 by Judge Taft, when upon the bench of the superior court of Cincinnati, in Société Anonyme De La Distillerie De La Bénédictine v. Micalovitch, Fletcher & Co., 36 Alb. Law J. 364, and in 1890 by Judge Thayer in Société Anonyme De La Distillerie De La Liqueur Bénédictine De L'Abbaye De Fécamp v. Western Distilling Co. (C. C.) 43 Fed. 416. There can be no question of the right of the appellee to the use of the garb with which it has clothed its product, nor of the design of the appellant to pirate that right and to sell its goods as the goods of the appellee.

It is urged that the appellee claims as the assignee or purchaser of the business from M. Legrand; that in the use of the trade-marks so purchased it should indicate that it is the assignee or purchaser, and that, failing therein, it cannot be protected in their use. This contention is predicated upon the case of Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706. There the complainant was the manufacturer of a certain medicine known as "Atwood's Vegetable Physical Jaundice Bitters," and claimed as its trade-mark that designation, with the accompanying labels; the right being derived from one Moses Atwood, the designation mentioned being blown in the glass, and the labels attached stating that the article was manufactured by Moses Atwood, Georgetown, Mass., while the medicine was in fact manufactured by the complainant in the city of New York. The court, by Mr. Justice Field, lays down the principle declared in the following language:

"The object of the trade-mark being to indicate, by its meaning or association, the origin or ownership of the article, it would seem that when a right to its use is transferred to others, either by act of the original manufacturer or by operation of law, the fact of transfer should be stated in connection with its use; otherwise a deception would be practiced upon the public, and the very fraud accomplished, to prevent which courts of equity interfere to protect the exclusive right of the original manufacturer. If one affix to goods of his own manufacture signs or marks which indicate that they are the manufacture of others, he is deceiving the public, and attempting to pass upon them goods as possessing a quality and merit which another's skill has given to similar articles, and which his own manufacture does not possess in the estimation of purchasers. To put forth a statement, therefore, in the

form of a circular or label attached to an article, that it is manufactured in a particular place by a person whose manufacture there had acquired a great reputation, when, in fact, it is manufactured by a different person at a different place, is a fraud upon the public which no court of equity will countenance."

It will be observed that in that case the labels contained the assertions that the article was manufactured by a certain person and at a certain place, both of which assertions were untrue, and that the decision proceeded upon the theory that such statements were not honest, and worked a deception upon the public in attempting to pass upon them goods as possessing a quality and merit which another's ·skill had given to a similar article. The trade-mark and labels upon the bottles of the appellee contain no direct assertion of the maker. It may rather be said that the association of the name with the article indicates the place, or process, or quality of manufacture. Here the place of manufacture remains the same, the secret process is unaltered. There would seem to have been no substantial change of ownership. The manufacture continued at the same ⁺place and substantially under the direction of the same person. The cordial made from the recipe of Bénédictine Monks has been known for nearly 400 years. Its reputation rests upon its quality. Its excellence is assured by the fact that it is made in accordance with the original formula, and at the place where it alone has from the beginning been made, and where the herb of which it is a decoction grows wild. The name, as applied to a cordial so ancient and in quality so unchanging, has by association become the designation of place of manufacture and of quality, rather than that of the manufacturer. There is here no false statement. There is no deception upon the public. In such case the reason of the rule fails, and the rule itself, proper in appropriate cases, should not here be permitted to work a wrong. The question was elaborately considered by Judge Taft and by Judge Thayer in the cases referred to, and their reasoning meets with our approval. See, also, Pillsbury v. Flour Mills Co., 64 Fed. 841, 850, 12 C. C. A. 432, 441; Stone Co. v. Wallace (C. C.) 52 Fed. 431, 437: Cuervo v. Landauer (C. C.) 63 Fed. 1003; Feder v. Benkert, 18 C. C. A. 549, 70 Fed. 613; Tarrant & Co. v. Johann Hoff, 22 C. C. A. 644, 76 Fed. 959; Hoxie v. Chaney, 143 Mass. 952, ·10 N. E. 713, 58 Am. Rep. 149; Carmichael v. Latimer, 11 R. I. 395, 23 Am. Rep. 481.

The decree is affirmed.