### A. BAUER & CO. v. ORDER OF CARTHUSIAN MONKS, CONVENT LA GRANDE CHARTREUSE.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

No. 893.

1. UNFAIR COMPETITION—IMITATION OF PACKAGES—INTENT.
    Defendant *held* chargeable with unfair competition in imitating the bottles and labels in which complainant's cordial known as "Chartreuse" has for many years been placed on the market,—the bottles being of

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

peculiar shape, not known to be made or used for any other purpose, and of two different colors, to denote the strength of the cordial,—and by falsely indicating by its labels that its product is made in France, whereas it is made in Chicago.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Chartreuse is "a highly esteemed tonic cordial obtained by the distillation of various aromatic plants, especially nettles, growing on the Alps. It derives its name from the celebrated monastery of the Grand Chartreuse in France, where it is made." Cent. Dict. The Order of Carthusian Monks has its monastery at La Grande, at or near Voiron, in the department of Isere, in the Republic of France. The order was instituted several centuries ago, and for 400 years has been engaged in the manufacture of this cordial, presumably at first for the use of the monks and for those in ill health. Afterward there grew up a large business in its manufacture and general sale. At some time, it does not appear definitely when, but over 50 years ago, the order of monks was incorporated under the laws of France, under the corporate name of "The Order of Carthusian Monks, Convent La Grande Chartreuse," the appellee here. The business of the manufacture and sale of this cordial is conducted in a section of the convent proper, under the supervision of an officer known as the "Pere Procureur," who is one of the monks of the order. The liqueur is made of different degrees of strength, indicated by the color given to it,— green or yellow. It is contained in glass bottles, colored according to the color of the cordial contained in it. This bottle is of peculiar shape, containing a litre of fluid, and is a round and tall bottle with a peculiar bulging neck, and so far as the record discloses, until the acts of the appellant complained of here, of a shape that was never used except for this cordial. There is blown in the glass near the base of the neck of the bottle the trade-mark "Chartreuse," in combination with the letters "G<u>de</u>," and seven stars surrounding a globe, surmounted by a cross. The labels are of green or yellow color, corresponding to the character and color of the cordial contained in the bottle. They are attached to the face of the bottle below the trade-name blown therein, and printed thereon are the words:

"LIQUEUR                       FABRIQUEE
"A LA G<u>de</u>                    CHARTREUSE."

Below each of these columns appears what purports to be a fac simile of a signature, "L. Garnier," above each imprint of the name being a small globe surmounted by a cross, and underneath the words "Déposé 1-7-69"; beneath these the words in the centre, "France," and beneath that the words "Agents for United States H. A. Batjer & Co. Broadway, 45, New York. Trade Mark No. 3989. Registered Sep. 12th, 1876, in the United States Patent Office at Washington, D. C." There is also a round-shaped label having a green or yellow ground corresponding with the color of the liqueur in the bottle, and of the same size as the top of the cork, and placed over the top of the cork, having thereon, around the circumference, the words "Grande Chartreuse. L. Garnier." The top of the neck of the bottle is also coated with wax of a reddish brown color. So identified, this liqueur has become celebrated in every country of the world, its annual sales in the United States of America amounting to 4,000 cases annually, in the state of Illinois 500 cases annually, and in the city of Chicago about 400 cases annually. The appellant in the year 1897 or 1898, a year or two before the filing of this bill, being familiar with the article Chartreuse, procured glass bottles to be made of the same color and almost identical in shape with the bottles of the appellee, and placed upon the market in these bottles a cordial, in the green bottles a cordial of green color, in the yellow bottles a cordial of yellow color, precisely as did the appellee. It placed upon the bottle containing the yellow liqueur a yellow label, and upon the bottle containing the green liqueur a green label, of the like shape with the label of the appellee, and having thereon the words:

"GRANDE                       DES
"LIQUEURE.                  CHASSEURS."

Underneath each of these was a device surmounted by a crown, and underneath it in the scroll an eagle upon an ermine cape, and crossing it diagonally two staffs similar to a bishop's staff, and underneath that the words, "Agent por les Etats Unis," and underneath that in script "Angelique Bouchard & Rochelle." The top of the neck of the bottle is covered with wax of a color apparently darker than that upon the appellee's bottle, but it is impossible to tell from the exhibit what, if anything, is impressed thereon, and there is no description of it in the record. The bill is filed for an injunction and for an accounting, and the decree to that effect is brought here for review.

F. H. Trude, for appellant.

F. M. Charlton and W. M. Copeland, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). The name "Chartreuse" was applied to this cordial because it was invented and made at the monastery of the Grande Chartreuse, and made by the Carthusian Monks. So that, as held by the French courts, the name at once designates the inventor, the maker, and the place of manufacture, and constitutes in each of these particulars a distinctive mark which could not truthfully be applied by others to a similar or analogous product. Garnier v. Berthe, 4 Annales, 119; Garnier v. Rivoire, 4 Annales, 155; Garnier v. Lindiere, 14 Annales, 225; Garnier v. Garnier, 14 Annales, 252; Garnier v. Garnier, 17 Annales, 241, 257; Browne, Trademarks, §§ 407–411, 582. There can be no question of the design of the appellant to pirate the trade-names of the appellee, to clothe its product in the dress adopted by the appellee, and to palm off its goods on the public as the goods of the appellee. It procured bottles to contain its cordial to be made in the same ungainly shape as the bottles used by the appellee. The glass was colored to correspond with the color of the cordial contained therein, precisely as was done by the appellee. Its labels correspond also in color with those of the appellee, and the arrangement of the lettering thereon corresponds with that upon the labels of the appellee. It substituted the word "Chasseurs" for "Chartreuse,"—a word not dissimilar in sound and in appearance, and likely to delude a purchaser. It placed upon its labels pasted upon the bottles containing its cordial the untruthful statement that Angelique Bouchard & Rochelle were agents "por les Etats Unis," putting forth a false suggestion that the article was imported from France, when in fact it was made in the city of Chicago. We have little patience with such schemes. Bauer, the president of the appellant, by his evidence appears to suppose that, by differentiating the label in any respect, there ceases to be imitation. He is uninformed in the law of unfair trade. In one of the French cases referred to, the court decreed the confiscation of all the spurious liqueurs and elixirs, the destruction of the false labels and marks, a fine of five hundred francs, six months' imprisonment, and the publication of the facts in the public journals. The officers of the appellant company have reason to congratulate themselves that they reside without the Republic of France. In the case of A. Bauer & Company v. La Société Anonyme de la Distillerie de la Liqueur Bénédictine de l'Abbaye de Fécamp (herewith decided) 120 Fed. 74, we have said all needful to be said

touching the law applicable to the case in hand. The claim is urged here, as it was urged there, that the appellee is not entitled to the aid of a court of equity because it is an assignee of the owner of the original business and trade-mark and good will, and puts forth its goods without a statement thereof. There is no foundation in fact for the claim. The order of Carthusian Monks, which has existed for centuries, is the order which was incorporated and which to-day is carrying on the business. The pere procureur appointed to manage this secular business is selected from the monks of the religious order, and is succeeded upon his death or retirement by some other monk. There is no change, and has been none, in the conduct of the business. The property and good will belong, as they have always belonged, to the order of Carthusian Monks, and there is no need of any statement of a change of the individual who fills for the time being the office of manager.

The decree is affirmed.