**AUDIO FIDELITY, INC., a corporation, Appellant,**

v.

**HIGH FIDELITY RECORDINGS, INC., a corporation, Appellee.**

**No. 16733.**

United States Court of Appeals Ninth Circuit.

Oct. 29, 1960.

Harris, Kiech, Russell & Kern, Warren L. Kern, Charles E. Wills, Los Angeles, Cal., for appellant.

Wright, Wright, Goldwater & Wright, Loyd Wright, Richard M. Goldwater, Edgar R. Carver, Jr., Andrew J. Davis, Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and BOWEN, District Judge.

BARNES, Circuit Judge.

This is an appeal by plaintiff below in an action for unfair competition based on diversity of citizenship. 28 U.S.C. § 1332 (a)(1). The district court denied recovery. This court has jurisdiction on appeal. 28 U.S.C. § 1291.

This case raises no question as to patent, copyright or trademark. Appellant records and distributes phonograph records which are universally sold in record jackets or sleeves, usually made of cardboard. The unfair competition alleged is not related to the contents of the record, but solely to the choice of language and

the art work and format expressing that language choice used on record jackets.

The district court found (1) that the record jacket was functional, *i. e.*, that it served a functional purpose, and hence no cause of action could exist under the teaching of Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339, (Finding 10); (2) that the appellant's record jacket was attractive and desirable, but not unique, arbitrary or fanciful (Finding 9); (3) that on the appellant's record jacket, the words including the term "Railroad Sounds" and the picture appearing thereon have not severally or in combination, acquired a secondary meaning (Finding 12); (4) that there has been no "palming" or "passing off" of appellee's record for appellant's (Finding 13); (5) that there has been no actual confusion between purchasers of the two records, and there exists no likelihood of confusion (Finding 15).

Because of the foregoing findings, the court concluded there had been no unfair competition between appellant and appellee, both as a matter of fact and law.

A dozen errors are charged by appellant, but we will consider that the five allegedly erroneous findings, as listed above, cover the real ultimate issues in this case.

Appellant produced the evidence of the commercial artist, Sloane, who had designed the jacket in New York. He had obtained the type for all the language on the front of the jacket, save the word "Railroad,"[1] from a type-house and arranged it to his design. Sloane had chosen and obtained the particular basic typographic style for the word "Railroad" from the catalogue of a photocopy house, Lettering Inc., in New York City. Sloane had then "embellished" this lettering "by painting in an in-line letter * * * with a drop of shadow red." With a transparency he combined the photograph of the locomotive, the type, and the photocopy as embellished by him into the "finished black and white art work ready for the printer." Mr. Sloane pointed out to the trial judge twenty-four "irregularities" in his work, with respect to the word "Railroad" as it appeared in appellant's end product, the jacket (Exhibit 1). Each of these "irregularities" existed, precisely, in the word "Railroad" appearing on appellee's alleged copy (Exhibit 2).

In addition, precisely the same colors were used in the word "Railroad" on Exhibit 2 as on Exhibit 1—yellow for the letters, red for the in-line emphasis, and black for the shadow of the letters.

The appellee's explanation for the similarity was that its art work had been entrusted to an itinerant artist named Chotiner, who had "one day walked in the door * * *. [H]e was just a boy who wanted to put together a sleeve." He was paid in cash, his whereabouts were unknown to appellee, either at the time of trial or earlier; his local address was unknown; he had submitted a bill which was not found nor produced at the trial; no corporate record was kept of this item of expense; no effort had been made to ascertain if appellee kept a re-

1. Appellant's jacket face, in addition to the word "Railroad" as described herein, superimposed over a photograph of a steam engine and the appellant's name and number in a box in the upper right hand corner, bore the words on the *left* of the jacket: "The Sounds of a Vanishing Era" in black, and to the *right*, below "Railroad," the words: "Sounds; Steam and Diesel" in black, and at the bottom: "a study in High Fidelity sound" in white.

Appellee's jacket face, in addition to the word "Railroad" as described herein, superimposed over a photograph of a steam engine, and the appellee's name in the upper right hand corner, bore the words: "I've been workin' on the" placed *above* "Railroad" in white; " * * * A Farewell to Steam" to the right below "Railroad" in white; and at the bottom: "The Sound documentary of a 'steamer's' last run" in white.

The largest type in appellant's Exhibit 1 was the word "Railroad." The same sized and largest type in Exhibit 2 was the word "Railroad."

The second largest type in appellant's Exhibit 1 was the word "Sounds." The second largest type on Exhibit 2 was the word "Sound."

ceipt for this work. On second thought, appellee's president thought "Chotiner" was paid by a check, cashed on the spot, but no search was made for this check, and none was produced at the trial. "Chotiner" was "from Chicago or Detroit or some eastern city."

In view of the decision below in favor of appellee, the court made no findings as to actual copying by appellee of appellant's jacket design. The court below, however, at the conclusion of the case, twice stated he was "satisfied from the evidence that the defendant has copied the plaintiff's art work." He later stated:

> "The defendant, this witness who testified, Mr. Vaughn [president of defendant corporation and sole witness produced by defendant], is probably one of the most unsatisfactory witnesses I have had for a long, long time. However, from the testimony I am satisfied there was a copying. But copying is not enough, I don't think."

It was the belief of the court below that despite the copying there could be no unfair competition, because the copied features were merely descriptive, or functional, and not fanciful, within the rule enunciated by this circuit in Pagliero v. Wallace China Co., supra. This being so, he stated he need not reach the questions as to "palming off," or misrepresentation, or secondary meaning or confusion, actual or likely. Nevertheless, in addition to finding the Wallace China case controlling, the district court found that there was no evidence of "palming," passing off, confusion, or secondary meaning.

This being a diversity case, the law of the forum state prevails. Pecheur Lozenge Co., Inc. v. National Candy Co., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Tas-T-Nut Co. v. Variety Nut & Date Co., 6 Cir., 1957, 245 F.2d 3, 8; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141; Jewel Tea Co., Inc. v. Kraus, 7 Cir., 1951, 187 F.2d 278, 282.

In California, the right to prevent unfair competition is well recognized. California Civil Code § 3369.[2] The 1933 revision of that section defined as unfair competition certain acts denounced by the California Penal Code,[3] as well as any "unfair or fraudulent business practice." While the Penal Code sections were repealed in 1941, that same year the Business & Professions Code, § 17,500 was enacted, making it unlawful for any person or corporation

> "with intent * * * to dispose * * * of personal property * * * to make or disseminate * * * [by] any advertising device * * * or in any other manner or means whatever, any statement concerning such * * * personal property * * * or concerning any circumstance or matter of fact connected with the proposed * * * disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

This is broad language. It has been broadly interpreted by the California courts.[4]

---

2. This section reads in part:
   "(2) Any person performing or proposing to perform an act of unfair competitin within this State may be enjoined in any court of competent jurisdiction.
   "(3) As used in this section, unfair competition shall mean and include unfair or fraudulent business practice and unfair, untrue or misleading advertising * * *."

3. As contained in Penal Code §§ 654a, 654b and 654c.

4. As an example, the doctrine of "unfair competition" is not confined to a case of actual market competition. Wood v. Peffer, 1942, 55 Cal.App.2d 116; 130 P.2d 220; Schwartz v. Slenderella Systems of California, 1954, 43 Cal.2d 107, 271 P.2d 857. And see discussion of liberal California rules generally, as compared to those of New York. Callman, Unfair Competition in Ideas and Title, 42 Calif. L.Rev. 77, particularly at 84. Cf. also Haeger Potteries, Inc. v. Gilner Potteries, D.C.1954, 123 F.Supp. 261.

Irrespective of its truth or falsity, any statement which is deceptive or merely misleading, without intent to deceive, violates the statute. People v. Wahl, 1940, 39 Cal.App.2d Supp. 771; 100 P.2d 550. The essence of the "unfair competition" prohibited, lies in the simulation and imitation of goods of a rival or competitor with the purpose of deceiving an unwary public into buying imitations under the impression that it is purchasing goods of such competitor. American Philatelic Society v. Claibourne, 1935, 3 Cal.2d 689, 46 P.2d 135.

While no patent, copyright or trademark is involved in this case,[5] descriptive words and personal names, though not protected by statutes, "are in common use as trade names, and the equities are just as strong for protecting them against the efforts of others to 'cash in' on the name as in cases where statutory protection is afforded." [6]

With this slight excursion into the general California law of unfair competition, we consider the circumstances of this case. It was decided primarily on the district court's interpretation of this court's holding in Pagliero v. Wallace China Co., supra. With that in mind, we shall discuss the Wallace China case in some detail.

The Wallace China case, like this, involved alleged unfair competition and neither trade-mark infringement,[7] patents, nor copyrights. Unlike this case with admitted diversity of citizenship, there was no diversity in Wallace China. For that reason, the federal court's jurisdiction was found in the Lanham Act (60 Stat. 441 (1946), 15 U.S.C.A. §§ 1125, 1126 (1958)) and a "substantial claim of federal right" thereunder. [198 F.2d 341.]

Under the Lanham Act, Judge Orr found that the "specific acts and practices condemned by the conventions, Article 10½ of the Paris Convention, and Article 21 of the Inter-American Convention [and prohibited in the Lanham Act by adoption from the conventions, 53 Stat. 1748; 46 Stat. 2907] do not include the acts charged against Tepco [8] here." Judge Orr pointed out that the term "unfair competition" as used in § 44(h) of the Lanham Act does not "go further than the treaties"; that "legislation specifically granting greater protection to designs has failed of passage in Congress in prior years"; and that the rationale of International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, "has not been extended to the design situation." Recognizing a right of action under the Lanham Act § 44(h), where the cause of action for unfair competition is based on secondary meaning, this court nevertheless held the designs in the Wallace China were "functional." Where such designs are functional, there is normally no right to relief. But, this court also held that this functional rule precluding relief is inapplicable where the "form of dress for the goods [is] primarily adopted for purposes of identification and individuality * * *". (Emphasis added.) Under such circumstances, the opinion continues, "imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection." [9] 198 F.2d at page 343. (Emphasis added.)

5. Although the appellant's jacket, Exhibit 1, had a copyright notice printed on it.

6. 40 Calif.L.Rev. 571, 572.

7. Despite the title of the Wallace China complaint.

8. Appellants Pagliero Brothers were doing business as Technical Porcelain & Chinaware Company, called Tepco.

9. "Imitation of the physical details and designs of a competitor's product may be actionable, if the particular features imitated are 'nonfunctional' and have acquired a secondary meaning. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299. But, where the features are 'functional' there is normally no right to relief. 'Functional' in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits

It should be noted that in the Wallace China case, the design was part of the china itself. Here the design of the word "Railroad" was on the jacket, not in the record. In the Wallace China case, in support of the classification of the design as functional, one case was cited, Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F.2d 279. In Cheney, the design was likewise contained within the product, the silk itself. It was held functional, though Judge Learned Hand recognizes in his opinion the protection afforded by the doctrine of nonfunctional features, and indicates a desire to apply that doctrine to the Cheney case. But he does not do so.

We do not disagree with either Judge Hand in Cheney or Judge Orr in Wallace China. Under the particular factual circumstances of those cases, the design was functional and hence not subject to protection under the applicable law against unfair competition. But the facts in those cases do not appear in the instant case. Here the design was in the accompanying jacket, not in the product itself. Appellant could not prevent appellee from using railroad sounds in a record, but should be able to prevent the duplication of a "form of dress * * * primarily adopted for purposes of identification and individuality," and "unrelated to basic consumer demands in connection with the product" (Wallace China, supra, 198 F.2d at page 343), as distinguished from basic consumer demands or preferences, or attention directed to the container rather than the product itself. A. Bauer & Co. v. Distillerie de la Liqueur Benedictine, 7 Cir., 1908, 120 F. 74; Lucien Lelong, Inc. v. George W. Button Corp., D.C.S.D.N.Y. 1943, 50 F.Supp. 708.

How is this public reliance on individuality and self-identification created?

Here we think if appellee had confined itself to the use of the word "Railroad" superimposed on a photograph of a steam engine on its record jacket, or used some entirely original and different language on it (perhaps the same language it had used on its jacket for the three years prior to its adoption and reproduction of appellant's "Railroad Sounds"), it would have run no risk of fooling the public. But here appellant had produced, to a greater or lesser degree, what Judge Yankwich has described in another case as a "fanciful conception" or "whimsical representation"—not a mere representation of a locomotive, but something resembling a trade-mark. Silvers v. Russell, D.C.S.D.Cal.1953, 113 F.Supp. 119, 122. It is true in the Silvers case the girl dancing on the phonograph record *was* trade-marked in California. But as that same decision points out—it was not only "a distinctive mark entitled to registration," it "culminated in a proprietary right," and the infringement of it would *"even in the absence of registration,* be protected as unfair competition." Id., at page 122. (Emphasis added.) Cf. Doeskin Products v. United Paper Co., 7 Cir., 1952, 195 F.2d 356; American Automobile Ins. Co. v. American Auto Club, 9 Cir., 1950, 184 F.2d 407; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299; Enterprise Mfg. Co. v. Landers, Frary & Clark, 2 Cir., 1904, 131 F. 240.

We mentioned above a distinction between Wallace China, supra, and the instant case. The former deals with the product; this, with the package in which the product reaches the market. This distinction was emphasized in a recent case:

"The basis of the appellant's present complaint, however, was not the

its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection." (Emphasis added; references to footnotes omitted.) Pagliero v. Wallace China Co., 9 Cir., 198 F.2d 339, at page 343. Cf. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 2 Cir., 1960, 281 F.2d 755.

appellee's use of packages constructed identically to its own, nor the appellee's use of a particular color or colors, but its deceptive imitation of the overall appearance of the appellant's trade dress in the arrangement, design, and collocation of printing and ornamentation.

" * * * The difference in the protection against imitation which will be accorded to an article of commerce on the one hand, and to a package in which the article is marketed on the other, was long ago noted. Writing for the Supreme Judicial Court of Massachusetts in Flagg Mfg. Co. v. Holway, 1901, 178 Mass. 83, 59 N.E. 667, that court's then Chief Justice Oliver Wendell Holmes pointed out that the law which permits one to market an identical copy of his competitor's product does not give him freedom to imitate the appearance of the package in which the article is sold. As there pointed out, the public policy which permits the imitation of an article of commerce is without relevance to the dress in which the article is marketed. ' * * [T]he label or ornament is a relatively small and incidental affair, which would not exist at all, or at least would not exist in that shape but for the intent to deceive; whereas the instrument sold is made as it is, partly at least, because of a supposed or established desire of the public for instruments in that form.' 178 Mass. 91, 59 N.E. 667.

"The same point was recently made by the United States Court of Appeals for the Ninth Circuit in Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339." Tas-T-Nut Co. v. Variety Nut & Date Co., 6 Cir., 1957, 245 F.2d 3 at pages 6–7. Cf. also Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Neely v. Boland Mfg. Co., 8 Cir., 1960, 274 F.2d 195.

■ The immediate problem in all cases is whether the offending name or mark is used for a functional purpose. If not, then it must be determined whether the similarity is likely to result in confusion of source. Restatement, Torts, § 716 (1938); Brooks Bros. v. Brooks Clothing, D.C.S.D.Cal.1945, 60 F.Supp. 442, at pages 449–451, affirmed 9 Cir., 1947, 158 F.2d 798, certiorari denied 1947, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840.

■ California follows the "likelihood of confusion" test and does not require actual proof of confusion on the part of consumers. Winfield v. Charles, 1946, 77 Cal.App.2d 64, 70, 175 P.2d 69. The sole question is: "Is the public likely to be deceived?" National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688, at page 691; Family Record Plan v. Mitchell, 1959, 172 Cal.App.2d 235, 342 P.2d 10; Mac-Sweeney Enterprises, Inc. v. Tarantino, 1951, 106 Cal.App.2d 504, 512, 235 P.2d 266; McCord Co. v. Plotnick, 1951, 108 Cal.App.2d 392, 239 P.2d 32; Wood v. Peffer, 1942, 55 Cal.App.2d 116, 122, 130 P.2d 220.

But in addition to the existence of the "likelihood of confusion" rule in California as the test of secondary meaning, we have here the uncontradicted testimony, completely satisfactory to the trial court, that there had been an actual copying. When that fact has been established, "the inference is usually plain that the imitator intends such a result." National Lead Co. v. Wolfe, 9 Cir., 1955, 223 F.2d 195, 202; Haeger Potteries, Inc. v. Gilner Potteries, D.C.S.D.Cal.1954, 123 F.Supp. 261, 269; Winfield v. Charles, supra.

Appellee chose to put on no evidence with respect to a lack of exact copying—at best its evidence was that an itinerant commercial artist employed by it must have stolen the idea. This does not rebut the presumption that arises under the California cases and other cases above cited.

■ We are satisfied that the general impression given by the offending jacket produced by appellee (appellant's Exhibit 2) upon the eye of the ordinary purchaser was such as to make him believe it to be the original article (appellant's exhibit 1). Ordinarily, such a determina-

tion is one of fact, where it is one upon which reasonable minds might differ. Under such a circumstance we could not interpose our judgment for that of the trial court. Oriental Foods, Inc. v. Chun King Sales, 9 Cir., 1957, 244 F.2d 909.

■ But the trial court, having become convinced that exact copying by appellee of appellant's design had taken place, applied an improper theory of law in failing to rely on the inference created by such proof of copying. That proof, without any opposing proof, is sufficient to establish a secondary meaning to the jacket. There is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence. National Van Lines v. Dean, supra. " '[A] late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile.' " National Lead Co. v. Wolfe, supra, 223 F.2d at page 202, quoting My-T Fine Corporation v. Samuels, 2 Cir., 1934, 69 F.2d 76, 77.

We hold that on the facts of this case, aided by a visual comparison, the use by appellee of the word "Railroad" in the peculiarly designed type with the particular color, "in-line lettering" and shading with which it was used, together with the capitalized word "Sound," all superimposed on a photograph of a steam engine (as disclosed in Exhibit 2), was likely to confuse and deceive the public and cause members thereof to be confused about such use.

We hold, therefore, that the matter must be remanded to the district court, to enter, at the very least, appropriate injunctive relief.

While we are not called upon and do not pass upon the matter, it appears to this court that the state of the present record is completely bare of adequate proof of substantial damage to appellant if any damage is to be awarded appellant. We recognize damage in a case of this kind is extremely difficult of proof. For how long a period does the public clamor to hear the stereophonic sound of steam engines? Was there not a saturation point in consumer demand reached sometime before or after the plagiarized jacket reached the market? On the other hand, is not the proof of the copying of the jacket the best evidence there was some substantial part of the market still left?

■ Irrespective of the difficulties inherent in determining actual loss of sales in a nonfungible commodity subject to wild gyrations of consumer choice, such difficulties cannot prevent the granting of injunctive relief (either absolute or with explanatory phrase), and the award of at least nominal damages, such as one dollar or one cent. By mentioning nominal damages, we do not imply, nor do we deny, that greater damages may be possible of proof.

The action is reversed and remanded, for consideration in accordance with this opinion.