[S. F. No. 14340. In Bank.—January 31, 1933.]

FIDELITY APPRAISAL COMPANY, Respondent, v. FEDERAL APPRAISAL COMPANY (a Corporation) et al., Appellants.

J. E. White and Orrick, Palmer & Dahlquist for Appellants.

Jesse H. Steinhart and John J. Goldberg for Respondent.

SEAWELL, J.—Plaintiff is incorporated under the name of Fidelity Appraisal Company; defendant is incorporated under the name of Federal Appraisal Company.

By very prolix pleadings plaintiff charged defendant corporation and Arthur L. Froelich, attorney J. E. White, E. J. Bowater and certain fictitious parties with entering into and prosecuting a conspiracy to draw away its customers and business, and that as a means of accomplishing its purpose said Froelich, White and Bowater selected as the name of said defendant corporation the name Federal Appraisal Company, which name, it is alleged, was selected because it closely resembles plaintiff's name, which circumstance would enable defendants to more readily confuse and mislead the business public as to the identity of the two corporations, to the damage of plaintiff and to the advantage of defendants. It was alleged and found by the court that Froelich and Bowater, who were the organizers of defendant corporation, were formerly employees of plaintiff, and as such employees business information came into their possession and to their knowledge, which they were wrongfully using in unfair competition with plaintiff in the solicitation of customers and in adopting similar business methods. Certain acts of unfair competition practiced by defendants are alleged in the complaint, but the above general statement is sufficient to characterize the action.

Judgment, which was later amended, went against all of the defendants in the court below, except as to attorney J. E. White and the fictitious defendants named in the action, for the sum of $10 actual damages and $300 punitive damages, with costs of suit. In addition, the trial court permanently enjoined defendant corporation and its officers from continuing to do business under its corporate name, and also from using any combination of words as its corporate name which would include the word *Federal*. The words "Fidelity" and "Federal," both of which are unques-

tionably words of common property and are frequently found in common trade usage and may not therefore be exclusively appropriated, as is convincingly illustrated by an inspection of public telephone and business directories, in which both frequently appear in business nomenclature, were held by the trial court to be so similar as to deprive all other persons of the right to use either of said words of designation if the first party to engage in a particular business had selected either as its business designation. In addition to the amended judgment permanently enjoining the use by defendant of its corporate name and the use of Federal as a part of any name it should select, defendants Froelich and Bowater and the corporation, its officers and agents, were permanently enjoined as follows:

"(a) From soliciting appraisal business from any person, firm or corporation with whom defendants Froelich or Bowater had prior to December 31, 1928, been conducting negotiations for business on behalf of plaintiff, and which negotiations remained uncompleted on December 31, 1928, including any person or firm known to said defendants or either of them to have been solicited for business on behalf of plaintiff.

"(b) From imparting to any of the remaining defendants or to anyone else the name or address or identity of any person, firm or corporation particularly described in subdivision (a) and so solicited for appraisal business by or on behalf of plaintiffs;

"(c) From entering into or executing or carrying out any future contract for the performance of appraisal service by defendants, Federal Appraisal Company, Froelich, Bowater, or any of them, with any person, firm or corporation, particularly described in subdivision (a) and heretofore so solicited for appraisal work by or on behalf of plaintiff, whether solicitation by or on behalf of defendant took place before or after the commencement of the action herein, and such restraint and injunction will apply equally if such solicitation shall take place hereafter; provided, however, that nothing herein shall apply to any appraisal business voluntarily offered to said defendants by any person, firm or corporation described in subdivision (a) herein which has not been so solicited for such business, directly or indirectly, by defendants Federal Appraisal Company, Froelich

and Bowater, or their agents, servants, employees or attorneys.''

The closing subdivision of the decree, (d), enjoins said defendants from using in any manner the name Federal Appraisal Company or the name Federal, or any other name so similar to the name of plaintiff as to be likely to deceive the general public, or any part thereof, into believing that the plaintiff and defendant are identical corporations; or making any representation or doing any acts calculated to deceive the general public, or any part thereof, into believing that the plaintiff and the defendant are identical corporations, or which may tend to confuse the general public as to the identity of said corporations.

Defendants have appealed from the judgment as entered against them on the grounds that the evidence does not sustain the findings, nor do the findings support the judgment. A brief statement of the controversial facts will suffice to illustrate the contentions of the parties.

Plaintiff was organized in 1905 by C. G. B. Schenk at Milwaukee, Wisconsin, with its head office at Milwaukee. Its head office for the states of California, Oregon and Washington was located at Los Angeles. The business in which it was and is engaged is making appraisements of the value of works of art, furniture, household furnishings, and residential, industrial and commercial properties for persons who desire appraisals to be made of the kind of property above mentioned. The main purpose and value of such appraisals, as explained by respondent, is that they furnish a basis for the adjustment of losses occasioned by fire in the settlement with insurance carriers, and also for losses and depreciations of values suffered from any cause.

In 1913 plaintiff, under the direction of C. G. B. Schenk, president, opened a branch office at San Francisco in the Monadnock Building. The San Francisco office was discontinued in 1918 because of a lack of business to justify its continuance. In 1926, eight years after said San Francisco office had been closed, plaintiff again opened an office in San Francisco, with Arthur L. Froelich in charge. Froelich had been in the employ of plaintiff at Los Angeles about one year, as a solicitor, when he was placed in charge at San Francisco. Mr. Schenk described him as a seller of soap and automobile accessories at the time he employed

him as a solicitor. Froelich was a solicitor merely, as all appraisals were issued from the Los Angeles office. Upon Froclich's arrival in San Francisco, he negotiated for and finally obtained desk room in the law offices of J. E. White, Esq., whose offices were located in the Monadnock Building. His use of a portion of the reception room of Mr. White was very restricted. He was not to use the reception room as a place for the general transaction of business, but as a place where he might receive his mail, keep papers and business reports, and make business appointments by use of the telephone. His work as solicitor took him into the field, and it was understood that he could not use Mr. White's office as a meeting place for business prospects. He paid a rental of but $20 a month, which also entitled him to list the name of plaintiff corporation in the telephone directory, using the same number assigned to Mr. White. The name of plaintiff was placed upon the entrance door.

During the latter part of 1928 Froelich determined to leave the employ of plaintiff and go into business for himself. Bowater, who had been in the employ of plaintiff at Los Angeles for some years, joined him in his business venture. On January 1, 1929, Froelich engaged J. E. White, Esq., to incorporate the proposed new company. The corporate name selected was Federal Appraisal Company, and upon a report from the Secretary of State that said name was available, the corporation was duly incorporated on January 7, 1929, by Froelich and Bowater, and so far as we are advised no objection was made to the name selected until the present action was filed, which was approximately eleven months after the defendant corporation had commenced doing business under its corporate name. Before Mr. White had any knowledge that Froelich had severed his connections with plaintiff, or intended to do so, he had decided to terminate the tenancy of plaintiff if it should insist upon the right of two of its employees, Kelly and Meyers, to occupy any portion of his office. His uncontradicted testimony on this point was: "I had made up my mind to notify the Fidelity that it would have to do one of two things; that it would either have to remove Mr. Meyers and Mr. Kelly from the office or it would have to remove the whole thing from the office. . . . When Mr. Kelly appeared on the scene that fixed my determination;

and as stated in the letter that Mr. Schenk [president of plaintiff corporation] wrote to me, he said it would be impossible for them to continue in my office if I could not give desk room to Mr. Meyers and Mr. Kelly, which I could not do under any circumstances.''

It appears from the testimony of Mr. White that even before he learned of Mr. Froelich's intent to sever his relations with the Fidelity Company, he had made the exclusion of Mr. Kelly and Mr. Meyers a condition of the occupancy of his office by plaintiff corporation. This condition was rejected by plaintiff and it established offices elsewhere.

Whether Mr. White had any prior knowledge as to Froelich's intention of forming a corporation is of no particular importance. He had a right to prefer him or his corporation as a tenant if he so chose to anyone else.

On January 1, 1929, Froelich engaged Mr. White to incorporate the new company. This done, Federal Appraisal Company made terms with Mr. White and installed its offices with him by retaining the desk room formerly occupied by plaintiff and by renting other space.

Appellant takes exception to a number of the findings of the court which follow the allegations of the complaint quite closely and describe plaintiff's business prestige in rather extravagant language. Examples of such instances are the finding that plaintiff is ''the oldest and largest appraisal company in the United States of America'', and the findings which concede for it a nation-wide reputation for honesty, ability and financial responsibility. The testimony upon which such findings are predicated resides in loose and broad statements made by the president of plaintiff corporation which would not be accepted as establishing the facts if said findings were, as a matter of fact, necessary to the judgment. Being immaterial for any purpose they may be passed over as harmless.

The complaint alleged that a conspiracy was entered into by Froelich, attorney White and Bowater to create a corporation with a name similar to that of plaintiff, with the purpose and intent of deceiving, confusing and misleading the patrons and prospective patrons of plaintiff to its damage by adopting methods of advertising, styles of stationery, business cards and methods of doing business so closely

similar to the manner and style and method of plaintiff that plaintiff has suffered and will suffer loss of its business by said alleged deceptive practices and unfair business methods unless defendants are restrained from continuing to do said acts or doing business under its corporate name. The trial court acquitted attorney White of the charge, but found that Froelich and Bowater entered into a conspiracy to draw from plaintiff its patrons by the adoption of what it found to be unfair business practices.

It is difficult indeed to draw the line between methods or acts which may be denounced as *conspiracies* to acquire the business or a part of the business of competitors, and those which may be considered legitimate acts or methods of competition. No fixed standard or code of business ethics has been adopted by the business world limiting or defining the extent to which business rivals may go in the employment of artifice, cunning or what are known as the "tricks of the trade" or business craft in drawing trade from one to another. Ingenuity, business thrift and alertness are a part of the capital stock of those engaged in rival businesses. So also it is difficult in many cases for the law to determine whether an employee should be permitted to solicit the patrons of his former employer. In the first case, it is only when the methods or acts of a business rival are clearly and manifestly unfair, and in the second case, only where the employee is in the possession of secret information not readily accessible to others and acquired by reason of his employment, that courts will afford injunctive relief.

 Whether the methods adopted by the defendants in the instant case were of that extraordinary character which will justify the court in denouncing them as unfair, was a question primarily for the trial court to determine, and this court will not disturb its findings unless they are entirely unsupported by the evidence. That the defendants were free to leave the employ of plaintiff and engage in a similar business, there can be no doubt. For men to agree and plan to enter business as associates, even though they have a design to draw their patronage from many rivals, or all that a particular rival may have, does not constitute them conspirators. Practically every copartnership, corporation or private individual which enters into

business does so with the intent of drawing all the business it possibly can from all competitors. If it were not so, there would be no such word as competition in business. We think the word "conspiracy" used in the pleadings and findings is a misapplied term, and that there is no question of conspiracy in the case. Certainly no case of criminal conspiracy is made out. The most that can be said from the evidence in this respect is that the defendants, who embarked upon a lawful business, employed unfair methods against plaintiff. Appellants complain that the alleged acts of unfairness were not sustained. While it is true that the alleged specific acts constituting unfairness were but few, and the evidence offered to sustain them was susceptible of two constructions, the court found against appellants and we are bound by its findings. There is evidence, conflicting it is true, that Mr. Froelich did solicit, after he had severed his connections with plaintiff, certain customers with whom he had negotiated as agent for plaintiff while an employee of said plaintiff. The court further found that the information which Froelich acquired by reason of his employment by plaintiff was of that confidential character which an employee is not permitted to turn to his own advantage.

■ We are in accord with the court on the proposition that if the defendants, or either of them, were carrying on uncompleted negotiations with prospective patrons on behalf of plaintiff at the time that Mr. Froelich and Mr. Bowater left the employ of plaintiff, or if negotiations were pending at said time, it would not be fair or equitable to permit them to reopen business negotiations with said prospective patrons on behalf of defendant corporation until a reasonable time thereafter should have elapsed. As to whether the information gained by Froelich while in the employ of plaintiff belonged to the confidential class which was peculiar to his employment, or whether it was information which was accessible to third persons generally with the exertion of but little effort, presented a close question, which the court found in favor of plaintiff, and which we are not disposed to discuss at length, for the reason that this finding is rendered unimportant by others which point to the same result.

The various acts complained of, including the alleged misrepresentations, go to the one question of unfair competition and are referable to injunctive relief and an action for damages, but said acts are not sufficient to deprive the defendants or their successors or a third party of the right to do business in a lawful manner under the name Federal Appraisal Company, or of the use of any other name which may contain the word Federal.

Other grounds of complaint upon which plaintiff asks for damages consisted in the fact that appellant corporation caused business cards to be printed upon white cardboard, resembling in size and shape and in style of type and arrangement of names, the cards of the plaintiff. The printed matter upon each card differs from that on the other, except that the cards of the respective corporations list each company under the same telephone number. This occurs from the fact that plaintiff's cards were printed at a time when it occupied offices in Mr. White's office. When defendant corporation succeeded it as a tenant of Mr. White, it listed itself under Mr. White's telephone number. The fact that respondent's corporate name remained unchanged for a time in the telephone directory under its former telephone number was not a fault imputable to defendants. The duty of seeing that it was listed under the proper telephone number was upon plaintiff. The fact that the telephone number could not be changed until a new issue of the directory was published is a matter of common temporary inconvenience. No question of copyright or trademark is involved in the style or printed matter which the cards bear. They are of the ordinary character, generally similar, but bear different names and reading matter.

Other alleged acts of unfair competition were put in issue, but being of an evidentiary character, it is not necessary to specifically describe them. It will suffice to state that the court did not regard the damage suffered by plaintiff to have been great, as it awarded nominal damages in the sum of only $10, and imposed punitive damages in the sum of $300.

■ We come now to the question as to whether the appropriation of the name Fidelity Appraisal Company by one corporation deprives all other persons desiring to en-

gage in the same business, or who being so engaged desire to form a corporation, of the use of the name Federal Appraisal Company. A mere statement of the proposition suggests an answer in the negative. ▆ The doctrine is so well settled by a multitude of cases that it is not necessary to cite specific cases, that words in common use are regarded as common property, and may be used by others in combination with other descriptive words, provided they are not so used in combination with other descriptive words, symbols or designs as to render it probable that they would mislead persons possessing ordinary powers of perception. Generic terms and words descriptive of place are not subject to exclusive appropriation. ▆ Both Fidelity and Federal are words in common use. They are not synonymous; nor are they included within the rule of *idem sonans*, nor do they so closely resemble each other in orthography or visual appearance that the use of one suggests the other. An inspection of the telephone directory will show that the first word in more than a score of business and trade companies and corporations is "Federal". Likewise an inspection of said directory under the head of "Fidelity" will disclose more than a dozen trade names which begin with the word "Fidelity". Appraisal companies are listed in the business directory to the extent of more than a dozen. That all of the words found in appellant's corporate name are words in common use, and that the word "Federal" does not appear as a part of the trade name of respondent, are not debatable questions. Federal Appraisal Company is no more an infringement upon respondent's corporate name than is the American Appraisal Company, which appears near it in the list of appraisal companies. This being so, the plaintiff has no greater exclusive control over the word "Federal", by reason of having adopted the word "Fidelity" as a part of its corporate name, than it would have to deprive the American Appraisal Company of a part of its name. We think the matter too clear to merit further consideration. The authorities on this subject, setting out examples, are fully considered in *Dunston* v. *Los Angeles Van & Storage Co.*, 165 Cal. 89 [131 Pac. 115] ; *Southern California Fish Co.* v. *White Star Canning Co.*, 45 Cal. App. 426 [187 Pac. 981] ; *Rixford* v. *Jordan,* 214 Cal. 547 [6 Pac. (2d) 959] ; *American Automobile Assn.* v.

*American Automobile Owners Assn.*, 216 Cal. 125 [13 Pac. (2d) 707]. Most all of the cases cited by respondent are cases in which rights of trademark or copyright have been infringed upon. The instant case is one of corporate existence, which was in the first instance approved by the Secretary of State under the provisions of our state statutes. (Section 296, Civil Code, as amended by Statutes 1929, page 1263, substance of section now contained in section 291, Civil Code, Statutes 1931, page 1767.)

It will be noted that signs or symbols are not used by either corporation in combination with words. The case is one presenting the use of simple language. Of course, it cannot be reasonably contended that the plaintiff has a monopoly on the common words "Appraisal Company". The decisions of this court and of other jurisdictions provide that: "The law of unfair competition does not protect purchasers against falsehoods which the tradesman may tell; the falsehood must be told by the article itself in order to make the rule of unfair competition applicable." (*Southern California Fish Co.* v. *White Star Canning Co.*, *supra*; *American Automobile Assn.* v. *American Automobile Owners Assn.*, *supra*; *Hill Bread Co.* v. *Goodrich Baking Co.*, (N. J. Ch.) 89 Atl. 863.)

It is clear that the portions of the decree included in section (d) thereof restraining the defendants from the use of the name under which defendant corporation was incorporated, and from employing as a part of its corporate name the word "Federal," cannot be sustained, and it is hereby reversed.

As to that portion of the judgment included in sections (a), (b) and (c), and heretofore set forth, the decree is affirmed. We do not understand the decree means to forever enjoin the defendants from soliciting business from persons who were the former patrons of plaintiff, but merely enjoins them from taking advantage of any secret information the defendants, as former employees, may have gained by reason of their employment. This injunction applies to the solicitation of persons with whom negotiations with plaintiff were pending or with prospective patrons specifically identified at the time defendants left the employ of plaintiff.

The probabilities are that after a period of more than two years since the judgment was rendered a repetition of the kind of acts enjoined as far as the solicitation of plaintiff's former patrons are concerned, has been reduced to the zero point by the changes which time has brought about. The defendant corporation's name appears in the list of present going business firms and if it has been continuously in competitive business with plaintiff, as the facts indicate, many grounds of business strife doubtless have faded out.

The portion of subdivision (d) which enjoins the use of the corporate name of defendant corporation or the word "Federal" as a part of the name of any appraisal business is reversed. The balance of said section is probably too indefinite to be enforceable. The specific acts enjoined, however, appear in other provisions of the judgment.

■ We are also of the view in the circumstances of the case that the award of exemplary damages should not be sustained. Such damages are allowable only in cases where the *animus malus* is made to appear satisfactorily, and such damages are inflicted in the nature of a penalty for the evil intent. We think that as a matter of law this extraordinary penalty should not be imposed in this action. Especially is this so in the light of the decision of this court holding that the use of the corporate name, Federal Appraisal Company, is not an encroachment on plaintiff's corporate name. It is impossible for this court to know what portion of the penalty was allocated to the use of its corporate name, which use was held by the learned trial court to be an unlawful invasion of plaintiff's rights, but which we hold herein was a lawful exercise of its right of selection, and what portion was allocated to its findings on other enjoined acts constituting unfair competition. This award, in the sum of $300, is therefore stricken from the judgment.

The decree and judgment is modified, affirmed and reversed as herein pointed out. The cause is therefore remanded to the trial court to enter judgment in accordance with the views herein expressed.

It is so ordered.

Waste, C. J., Curtis, J., Preston, J., Shenk, J., and Langdon, J., concurred.