[Civ. No. 15446.   Second Dist., Div. Three.   Nov. 29, 1946.]

EDWARD A. WINFIELD, Respondent, v. EMERSON
WINFIELD CHARLES, Appellant.

Marco & Teschke, Vincent Anthony Marco and Samuel H. Sherman for Appellant.

Harry G. Sadicoff for Respondent.

WOOD, J.—Defendant Emerson Winfield Charles appeals from the judgment in favor of plaintiff Edward A. Winfield which enjoins defendant from using the name "Winfield Manufacturing Company" or any abbreviation thereof, and "from using the name 'Winfield' or any simulation thereof, as a part of any name used by him, excepting the name of Emerson Winfield Charles."

Appellant contends that findings of fact are not supported by the evidence.

Plaintiff is a mechanical engineer, designer, and manufacturer of combustion engines, and various parts for them. His carburetors, which bear the name "Winfield" and are known by that name, were introduced into automobile racing in 1923, and since 1925 have been used almost exclusively by automobile racing drivers. Over a period of years the Winfield carburetor received a great amount of publicity in newspapers, magazines, and automotive journals for superior performance in connection with fast automobiles. Other parts, developed by plaintiff, which were frequently used in racing automobiles were cams, camshafts and cylinder heads. Plaintiff's carburetors were adaptable for use in all motors, and his products have also been used in racing boats, passenger automobiles, trucks, small airplanes, and for industrial purposes.

Plaintiff was also a well-known automobile racing driver and, it appears, from 1921 to 1927 won several races while using his carburetors and camshafts. Clippings from newspapers were introduced in evidence which show that plaintiff and his products received much favorable publicity as the result of such activity. There was testimony that the automobiles that won the Indianapolis races invariably used Winfield carburetors in their motors; that over a period of years the automotive trade journals have contained news items which were complimentary to plaintiff; that the name

"Winfield" was the most prominent factor in advertisements of Winfield equipment in periodicals and magazines; that plaintiff was well known as a camshaft specialist, and was well known in the world for manufacturing other parts for combustion engines; that the name "Winfield" is synonymous with the development of "internal motors"; that the name "Winfield" was known in France, England and Italy in connection with automobile motors; that plaintiff was always referred to as "Winfield"; that the Ford Motor Company experimented with the Winfield carburetor for use in its Model T Ford, and it proved to be better than the one they had been using; that plaintiff made tortional vibration dampeners for Model A Fords; that he designed an engine for buses for the Twin Coach Company of Kent, Ohio, about two years ago; that at the time of the trial he was designing a new Diesel engine for the Twin Coach Company which was to be built under Winfield patents; that the coach company's rights to said engine are to be limited to its particular field, and plaintiff is to retain the rights for all other fields; and that he intends to build said engine under the name "Winfield" at some time in the near future.

The evidence shows that plaintiff began engineering and designing when he was 13 or 14 years of age, and commenced the development of carburetors and various parts for engines; that he did experimental work until about 1920, when he went into partnership with one Durant in a machine shop and automobile repair business in Glendale under the name "Winfield and Durant"; that they also did business as "Winfield Inventions, Ltd."; that the carburetor was developed soon after the formation of that partnership, and it was called the "Winfield Carburetor"; that it had been known by that name ever since; that the partnership was discontinued about 1923, and plaintiff went into business in La-Canada, under the name "Edward A. Winfield," designing and producing parts for combustion engines; that everything he made carried the name "Winfield." At this time there was a company in Glendale by the name of "Winfield Carburetor Company," owned by one Morrow who was licensed by plaintiff to manufacture the Winfield carburetor on a royalty basis. In 1937 or 1938 plaintiff moved to his present place of business, which he owns. In 1939 plaintiff acquired all the interest in the Winfield Carburetor Company and, thereafter, caused a sign to be painted on the front of his

building and one on the side, each of which read: "WIN-FIELD Carburetor & Manufacturing Co." Each sign consisted of two lines with the name "Winfield" in large letters forming the first line, and the balance of the name in small letters forming the second line. Plaintiff testified that since 1939 he has been the sole owner of this business, but has been unable to manufacture his products since this country entered the war; that at the time of the trial he was making arrangements "for continuing" that business.

Defendant went into the radio business in Spring Valley, Illinois, in 1926, using the name "Winfield Radio Supply Company." Previous to that time he had always used the name "Emerson W. Charles." In 1941 defendant quit business in Illinois, and came to Los Angeles. From May, 1941, to May, 1942, defendant was in the radio service business at 1230 West Olympic Boulevard under the name "Winfield Radio." In May, 1943, defendant went into business at 1818 West 9th Street in Los Angeles, doing war contract work under the name "Winfield Manufacturing Company," and made electrical parts, bomb rack holders, some bomb parts, did punch press work and some electronic work. The evidence shows that defendant had the name "Winfield" in rather large letters in gold leaf on each window, and below that in very small letters "Winfield Manufacturing Co." In December, 1944, while engaged in such war work, defendant moved to his present address in Glendale, a few blocks from plaintiff's place of business, and a portion of his building may be seen from plaintiff's building. Defendant caused signs to be painted on his building—one on the front and one on the side, each of which read "WINFIELD MANU-FACTURING CO." in very large letters. Defendant testified that he moved to his present address because his business had grown to such proportions the quarters on Ninth Street were too small; that at the end of the war he began receiving "cut-backs" in his orders and he changed to other fields of manufacture; that he made automobile jacks and socket wrenches which went to customers with "priorities", such as Sears Roebuck and Montgomery Ward; that the jacks and wrenches carried no identification marks as to the source of manufacture; that he made about 1,000,000 key blanks in 1944 for one Reynolds who did business under the name "Winfield Sales and Service Co."; that Reynolds had no

place of business of his own, and "borrowed" desks from defendant and used defendant's telephone; that Reynolds had cards printed with defendant's telephone number on them, but defendant "made him quit using them"; that at first defendant put his name, "Winfield Manufacturing Company, L. A." on the keys, but Reynolds forced defendant to discontinue that practice after 50,000 to 100,000 had been stamped.

Appellant contends that the evidence does not sustain the following findings: that there was fraud, deceit or unfair practice on the part of defendant; that there was competition between plaintiff and defendant; that there was any damage or prospective damage to plaintiff; and that the name "Winfield" had acquired a secondary meaning in the automotive industry.

This action is based upon alleged unfair competition on the part of defendant. Section 3369 of the Civil Code declares that unfair competition includes, among other things, "unfair or fraudulent business practice." (Emphasis added.) The evidence hereinabove set forth shows that plaintiff, over a period of 25 years, has established a wide and honorable reputation as an expert in the design and manufacture of combustion engines and their various parts; that his products over this period have been designated and known by the name "Winfield"; that he won renown as a racing driver, and the name "Winfield" is closely associated with fast motors. Furthermore, there was evidence that over the period of years plaintiff had expended large sums of money in advertising his products; that he first used his products in racing automobiles for advertising purposes, and expended large sums of money doing special work on the automobiles which he drove in the races; that he expended great sums of money in designing, developing and patenting his inventions; that his patents represent an investment of approximately $25,000; that his patents pending represent an investment of over $5,000; and that over a period of 20 years plaintiff had approximately 10,000 catalogs printed, and distributed them to "Winfield dealers all over the country," and sent some to Europe. One of the catalogs was introduced in evidence. It was a loose-leaf catalog over ½-inch thick, and measured approximately 8½ by 11 inches. It contained photographs, prices, and directions for installing numerous types of Winfield carburetors in various automobiles, including those made

by General Motors, Ford, Chrysler, and many others. It also contained descriptions and prices of other parts for engines, of wrenches and of screw drivers produced by plaintiff.

Although defendant used the name ''Winfield'' in his business since 1926 in connection with radios and radio service, the evidence shows that when he began using the name, ''Winfield Manufacturing Company,'' he for the first time, used the word ''Winfield'' set apart as is plaintiff's custom, that is, with ''Winfield'' forming the top line of a two-line name. About two months after defendant started using the name ''Winfield Manufacturing Company,'' plaintiff learned about it and immediately had his attorney write defendant a letter demanding that defendant cease using the name ''Winfield,'' and explaining that plaintiff owned the registered trademark ''Winfield,'' had the prior right to its use, had been using it in his business for over 20 years, and had developed it to the point where it had become a valuable asset. Defendant received but ignored the letter and, thereafter, moved his business to a place about two blocks ''in a straight line'' from plaintiff's place of business, and there displayed the name ''Winfield Manufacturing Co.'' along the side and front of his one-story building in large letters. It appears from photographs in evidence that the height of the letters along the side of the building are more than 1/6th the height of the side wall, and that the height of the letters along the front of the building are more than 1/12th the height of the front wall. A sheet from the 1945 telephone directory was introduced in evidence, and it shows plaintiff's name listed as: ''Winfield Carburetor Co.''; ''Winfield, Edward A. [then following in smaller type] Winfield Carburetor Co.''; and ''Winfield Mfg. Co. [then following in smaller type] Winfield Carburetor Co.'' Defendant was listed therein, between the last two listings of plaintiff, as ''Winfield Manufacturing Co.'' It also shows that plaintiff and defendant had telephone numbers preceded by the prefix ''Citrus.'' It is not only reasonable to suppose that confusion would result from such listings, and from the proximity of the plaintiff's and defendant's places of business, but there was evidence that defendant had received telephone calls relating to plaintiff's products, and that plaintiff had received telephone calls relating to defendant's products. Defendant and one of his employees testified that when they received

calls which were meant for plaintiff, they informed the callers of the mistake. Two witnesses called on behalf of plaintiff, one a man whose business is one block from that of defendant and the other a consulting engineer, testified that they at first thought defendant's place of business was plaintiff's.

It is unnecessary, in such an action, to show that any person has been confused or deceived. It is the likelihood of deception which the remedy may be invoked to prevent. (*Schwarz* v. *Schwarz*, 93 Cal.App. 252, 255 [269 P. 755].) "It is sufficient if injury to the plaintiff's business is threatened, or imminent to authorize the court to intervene to prevent its occurrence." (*Sun-Maid Raisin Growers* v. *Mosesian*, 84 Cal.App. 485, 497 [258 P. 630].) Although surnames may not be appropriated as trademarks, "long association of a name with a product results in that name taking on a new or secondary meaning, which meaning submerges the primary meaning of the word as a man's name merely, and the new meaning survives as the identification, in the market, of a product and its source." (*J. A. Dougherty's Sons* v. *Dougherty* (1940), 36 F.Supp. 149, 151.) Both plaintiff and defendant are engaged in the manufacturing business, both have well-equipped machine shops, and it appears that both have machinery adaptable to manufacture articles other than those they at present manufacture. Appellant argues that the record shows that plaintiff and defendant do not manufacture the same articles or solicit the same trade and customers. Plaintiff's name has become a valuable asset in connection with any equipment associated with automobiles, and the evidence shows that the bulk of defendant's business is manufacturing automobile jacks and wrenches. However, it is not always necessary to prove actual market competition where the purpose of the action is to secure injunctive relief. It was stated in *Wood* v. *Peffer*, 55 Cal.App.2d 116, at page 122 [130 P.2d 220]: "We are aware, however, that equity may be invoked without market competition. Emphasis should be placed on the word 'unfair' rather than 'competition'."

Plaintiff has established a reputation for reliability and meritorious products. If articles which are not produced by him are attributed to him or associated with his name, the injury is obvious. The court stated in the case of *Del Monte Special Food Co.* (appellee) v. *California Packing Corporation* (appellant), 34 F.2d 774, at page 775: "The in-

jury to the appellee by the use of the Del Monte Brand by the appellant does not result from preventing sale by appellee of oleomargarine of its own, *but from a representation to the public that it produces a product which it does not in fact produce and over which it has no control.* Its reputation for quality is therefore placed to some extent in the hands of a corporation who owes it no allegiance and has no concern in maintaining the high reputation established by the appellee, and who may utilize that reputation to sell the public an inferior production." (Italics added.) Furthermore, in the interest of fair dealing courts of equity will protect the person first in the field doing business under a given name to the extent necessary to prevent deceit and fraud upon his business and upon the public. For this purpose the second in the field may be enjoined from using the name, even though the principal places of business are at a considerable distance from each other. (*Benioff* v. *Benioff*, 64 Cal.App. 745, 748 [222 P. 835].) "No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is, in a measure, a law unto itself. Unfair competition is a question of fact. . . . The universal test question is whether the public is likely to be deceived." (63 C.J. 414; *Pohl* v. *Anderson*, 13 Cal.App.2d 241, 242 [56 P.2d 992].) ▮▮ There was substantial evidence to support the findings of the trial court.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.