**SILVERS v. RUSSELL et al.**

No. 13957.

United States District Court
S. D. California, Central Division.
June 10, 1953.

Bernard Reich, Beverly Hills, Cal., and John B. Brady, Washington, D. C., for plaintiff.

Lyon & Lyon, Reginald E. Caughey, Robert Douglas Lyon and Charles G. Lyon, Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

The complaint is for infringement of copyright, trademark and unfair competition and consists of four counts. Injunction and damages are sought. The basis for the complaint is the claim, both under Federal copyright laws and under state and federal trademark registration, of a distinctive mark, used as a label on phonograph records and catalogs advertising such records, and consisting of the representation of a phonograph record, with a girl in ballet costume dancing on it. In conjunction with it the words "Stepping Tones" are also used.

## I

### The Requirements of the Law of Copyright

Before discussing, in detail, the facts in the case and the legal principles involved, we point to the fact that two things are necessary to acquire federal copyright: (1) publication of the work with notice, 17 U.S.C.A. § 10, and (2) prompt deposit in the Copyright Office or in the mail of two complete copies of the best edition of the publication. 17 U.S.C.A. § 13. The statute also provides:

> "No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with." 17 U.S.C.A. § 13.

A copyright claim was allowed in the name of the plaintiff as successor in interest of the author, Zion Myers, on October 5, 1950. The Certificate of Registration gives March 29, 1937, as the publication date *shown by the affidavit*. At first glance it would seem that so great a lapse of time between publication and deposit would invalidate the claim of copyright. For it might well be argued that a deposit after a lapse of over thirteen years was not compliance with the statute which requires that copies "shall be promptly deposited". 17 U.S.C.A. § 13. But the Courts have held that delay in deposit, while resulting in the penalties of the copyright statute,—a fine of $100 and double the price of the copies,— 17 U.S.C.A. § 14, does not affect the validity of the copyright. This, despite the fact that this section provides,—as did section 13 of the prior Act,—that upon failure to deposit after demand "the copyright shall become void".

In 1939, the Supreme Court in interpreting section 12 of the Copyright Act of 1909—which was the predecessor of the present section 13—in a case where there had been a delay of deposit of nine months held that such delay did not prohibit an action based on infringement *prior to the date of the deposit*. The Court said:

> "*Petitioner's claim of copyright came to fruition immediately upon publication. Without further notice it was good against all the world.* Its value depended upon the possibility of enforcement.
>
> "The use of the word 'until' in section 12 rather than 'unless' indicates that mere delay in making deposit of copies was not enough to cause forfeiture of the right theretofore distinctly granted." Washingtonian Publishing Co. v. Pearson, 1939, 306 U.S. 30, 39, 59 S.Ct. 397, 402, 83 L.Ed. 470. (Emphasis added.)

The Court also ruled that the penalty then provided in section 13 and now contained in section 14 is the only penalty for failure to deposit, saying:

> "The penalty for delay clearly specified in section 13 is adequate for punishment of delinquents and to enforce contributions of desirable books to the Library. To give section 12 a more drastic effect would tend to defeat the broad purpose of the enactment. The Report of the Congressional Committee points out that forfeiture after notice and three months' further delay was thought too severe by some. Nowhere does it suggest approval of the much more drastic result now insisted upon by respondents.
>
> "Read together as the Committee which reported the bill said they should be, sections 12 and 13 show, we think, the Congress intended that prompt deposit when deemed necessary should be enforced through actual notice by the register; also that while no action can be maintained before copies are actually deposited, *mere delay will not destroy the right to sue. Such forfeitures are never to be incurred from doubtful language.*" Washingtonian Publishing Co. v. Pearson, supra, 306 U.S. at pages 41–42, 59 S.Ct. at page 403. (Emphasis added.)

The Court of Appeals for the Second Circuit in Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 1946, 161 F.2d 406, 408, followed this ruling in a case where

the claim of original copyright had been made in 1912 and a deposit was *actually not made until 1939* when the successor in interest of the original copyright owner sought a renewal. So the effect of failure to deposit promptly, so far as the institution of a civil action is concerned, merely means that no action can be maintained *until* there has been compliance with the Act. That is the teaching of both cases just cited.[1]

## II

### Trademarks and Unfair Competition

A claim to trademark filed with the Secretary of State of California under California law, California Business and Professions Code, §§ 14,400–14,402, was allowed on March 29, 1937. The Claim described the mark as "the words Stepping Tones with the figure of a dancing girl," etc. "used in connection with the production and sale of phonograph records". A federal trademark was not secured until March 14, 1952, on an application dated November 13, 1950. It was secured in the name of the plaintiff. The file wrapper, introduced into evidence by the defendant, shows that the original claim was rejected because of uncertainty as to whether the claim extended also to the "representation of the record *per se* apart from the mark as shown". It was finally allowed when a disclaimer as to such representation was filed.

In our view, the mark was clearly valid under the Trade Mark Act. 15 U.S.C.A., §§ 1051–1052. The representation of a dancing girl on top of a phonograph record is a fanciful idea. A dancing girl in front of a phonograph record *might* not be fanciful because dancers *dance to* phonograph records, but not *on top of* phonograph records. So the cases upon which the defendant relies in urging the invalidity of the mark, such as the representation of a horse on a box containing a horse medicine, Bickmore Gall Cure Co. v. Karns Mfg. Co., C.C.Pa.1903, 126 F. 573, or the representation of a woman pouring the contents of a can into a toilet bowl, Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, or the representation of a circle or ball as a symbol, Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, 325, do not apply. For in those cases, the Courts were dealing either with an indistinct symbol, such as a circle or ball or the representation of a figure of an animal or a human being. And they held that their use did not prevent others from using them *in a different manner*. Indeed, the Judson case, upon which greatest reliance is placed by the defendant,—the "Sani-Flush" case,— recognized the validity of the mark but merely held that the use of the word "Vanish" and the contrasts in posture of the figure showed a distinction which militated against infringement. The Court said:

> "Of course, the defendant cannot represent its product in use in such a setting, or in such a way, as to render it likely that the purchasing public will confuse its product with that of the plaintiff. But this does not mean that the defendant is relegated to advertising its product by showing it in use by an old crone in a mother hubbard with a scowl on her face. Clearly in advertising, to quote from the current musical play 'South Pacific', 'There is nothing like the frame of a dame', and we cannot see why the defendant is not as much entitled to take commercial advantage of pulchritude as the plaintiff."

Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, 466.

We return to the label involved here and apply to it the criteria of these cases. And the conclusion is warranted that we are not dealing with a *mere representation* of a woman or animal in an ordinary position. We are dealing with a fanciful conception, a girl dancing on top of a phonograph record. This is a distinctive mark entitled to registration and culminated in a proprietary right, the infringement of which would, even in the absence of registration, be protected as unfair competition. It was also "an original expres-

---

1. This point is treated first because at the hearing I was inclined to the view that the long delay might prevent recovery altogether.

sion of an idea" as that phrase is used in the law of copyright.

Originality in the realm of copyright "* * * refers to the form of expression and not to novelty in the subject matter." Chamberlin v. Uris Sales Corporation, 2 Cir., 1945, 150 F.2d 512, 513. (Emphasis added.)

See, Dorsey v. Old Surety Life Ins. Co., 10 Cir., 1938, 98 F.2d 872, 873, 119 A.L.R. 1250; Harold Lloyd Corporation v. Witwer, 9 Cir., 1933, 65 F.2d 1, 24; Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 1932, 61 F.2d 131, 135–136; Ricker v. General Electric Co., 2 Cir., 1947, 162 F.2d 141, 142; Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc., 2 Cir., 1951, 191 F.2d 99, 101–102; Yankwich, Originality in the Law of Intellectual Property, 1951, 11 F.R.D. 457, 482.[2] If, as appears here, the mark has enough originality to be copyrightable, it certainly is distinctive enough to satisfy the lesser demands of trademark law. In the latter field, the courts have drawn the distinction between illustrations which merely describe a product,—the functional, and the non-functional which are a whimsical representation of a particular product. Enterprise Manufacturing Co. v. Landers, Frary & Clark, 2 Cir., 1904, 131 F. 240 (the "coffee mill" case considered by many as the first case on the subject); Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299; William R. Warner & Company v. Eli Lilly & Company, 1928, 265 U.S. 526, 531–532, 44 S.Ct. 615, 68 L.Ed. 1161; Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 128, 67 S.Ct. 1136, 91 L.Ed. 1386. One of the best statements of the rule is found in a case decided by our own Court of Appeals, Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339, 343:

"Imitation of the physical details and designs of a competitor's product may be actionable, if the particular features imitated are 'non-functional' and have acquired a secondary meaning. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299. But, where the features are 'functional' there is normally no right to relief. 'Functional' in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality, and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection." (Emphasis added.)

In the light of these cases, a horse's head describing horse medicine, Bickmore Gall Cure Co. v. Karns Mfg. Co., 1903, C.C. Pa., 126 F. 573, a woman pouring cleanser into a bowl, Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461, a girl dancing would be functional. But a girl dancing on a phonograph record is nonfunctional, as it is a fictional representation not of dancing records generally but of plaintiff's records used to teach dancing.

### III
#### The Distinctiveness of the Mark

There is direct authority for holding that the use of even a human figure in an original manner is protected. In Gross v. Seligman, 2 Cir., 1914, 212 F. 930, an artist posed a model in the nude and from it produced a photograph which he called "The Grace of Youth". He copyrighted it and sold his rights to the plaintiff. Two years later, the artist placed the same model in the identical pose and made another photograph. In the second photograph the model wore a smile and held a cherry stem between her teeth and was called "Cherry

2. Under the California statute "any person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner." California Business and Professions Code, § 14,400.

Ripe", while in the first one she was posed with her face in repose. The backgrounds were not identical and there were some changes in the contours of the model's figure. The Court held that the second photograph could not be regarded as an independent conception saying:

"The case is quite similar to those where indirect copying, through the use of living pictures, was held to be an infringement of copyright. Hanfstaengle v. Baines & Co. (L.R.1894) A.C. 20, 30; Turner v. Robinson, 10 Irish Chancery 121, 510.

"The eye of an artist or a connoisseur will, no doubt, find differences between these two photographs. The backgrounds are not identical, the model in one case is sedate, in the other smiling; moreover the young woman was two years older when the later photograph was taken, and some slight changes in the contours of her figure are discoverable. But the identities are much greater than the differences, and it seems to us that the artist was careful to introduce only enough differences to argue about, *while undertaking to make what would seem to be a copy to the ordinary purchaser who did not have both photographs before him at the same time*. In this undertaking we think he succeeded." Gross v. Seligman, supra, 212 F. at pages 931–932 (Emphasis added.)

A similar ruling was made in Doeskin Products v. United Paper Co., 7 Cir., 1952, 195 F.2d 356, in which the trademarks "Doe" and "Doeskin" on paper napkins and other paper products, with the representation of a doe was protected against an infringer who sought to sell the same products un-

der the name of "Fawn" and the use of the pictorial representation of a fawn or doe. These cases indicate the identity of the criteria in determining originality under the law of copyright and distinctiveness of a mark under the law of trademarks.[3]

IV

Infringement and Unfair Trade Practice

In what precedes, we have indicated why, in our opinion, the mark involved here has the originality of expression required in the law of copyright, and the distinctiveness required by the law of trademarks. Before proceeding to discuss the facts relating to use, and the similarity of the mark used by the defendant, we quote a summary of the law which we have sought to expound in the preceding subdivision as to the *distinctiveness* of marks, from one of the late decisions of the Court of Appeals for the Ninth Circuit.

The case is American Automobile Ins. Co. v. American Auto Club, 9 Cir., 1950, 184 F.2d 407, 409, in which the Court said:

"Generic terms and words descriptive of place are *publici juris* and not subject to exclusive appropriation. But where there appears use of such in connection with goods or business so that the public identifies them with a particular trader they take on a secondary meaning which will be protected against another's deceptive use thereof.

"A greater degree of protection is afforded to fanciful trade names than to names in common use. Where a generic word is widely used in the designation of many diverse businesses, its use by one may not be prohibited at the behest of another, even in closely related fields, unless such use

---

3. "Of course, these observations are intended to apply to *ornamental designs, or pictorial illustrations addressed to the taste. Of these it may be said that their form is their essence*, and their object, *the production of pleasure in their contemplation. This is their final end. They are as much the product of genius and the result of composition, as are the lines of the poet or the historian's periods*." Baker v. Seld-

en, 1879, 101 U.S. 99, 103, 25 L.Ed. 841. (Emphasis added.)

"Obviously, it seems to us, the appellee could not copyright a system or method of selling a product. Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841. *It could copyright a set of original symbols or designs which it uses as a means of effecting the sale of its product*." Kaeser & Blair, Inc., v. Merchants' Ass'n, Inc., 6 Cir., 1933, 64 F. 2d 575, 577.

will indicate a common origin or endanger the business reputation of the other. As expressed by this Court in Treager v. Gordon-Allen, Ltd., 9 Cir., 71 F.2d 766, 768, 'There is a distinction as to the degree of exclusiveness of appropriation accorded to the originator of a trade-name depending upon the name selected. *"If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many different kinds of business."* France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304, 306.' " (Emphasis added.)

█ In the realm of unfair trade practices or unfair competition, protection will be afforded if the similarity is likely to result in confusion of source. Restatement, Torts, Sec. 716, Comment B, Sec. 727; Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141. And see the writer's opinion in Brooks Bros. v. Brooks Clothing Co., D.C.Cal.1945, 60 F.Supp. 442, 449–451, and cases cited in footnotes 12 to 25.

█ Unfair competition is now governed by local state law. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 1952, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Jewel Tea Co., Inc., v. Kraus, 7 Cir., 1951, 187 F.2d 278, 282. So when a cause of action for unfair competition is tried in the federal court on the theory of "pendent jurisdiction", 28 U.S.C.A. § 1338(b); Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1939, 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195, state law must be applied. California decisions grant relief when there is likelihood of consumer-confusion, whether the practice be unfair or fraudulent. California Civil Code, § 3369; Winfield v. Charles, 1946, 77 Cal.App.2d 64, 70, 175 P.2d 69; Eastern Columbia, Inc., v. Waldman, 1947, 30 Cal.2d

268, 270–271, 181 P.2d 865; American Distilling Co. v. Bellows & Co., Inc., 1951, 102 Cal.App.2d 8, 25, 226 P.2d 751; MacSweeney Enterprises, Inc., v. Tarantino, 1951, 106 Cal.App.2d 504, 513, 235 P.2d 266; McCord Company v. Plotnick, 1951, 108 Cal.App.2d 392, 395, 239 P.2d 32. These late cases and many older cases which they follow, lay down the rule that the *ultimate test is whether the public is likely to be deceived.* Wood v. Peffer, 1942, 55 Cal.App. 2d 116, 122, 130 P.2d 220. When this is the case, absence of competition in the same field will be disregarded.[4]

█ In the case before us, the competition is in the same field. And the question to determine is whether there was imitation, likely to mislead the public. Our conclusion is that the infringement was not only likely to deceive but *that it did actually deceive.*

## V

### Similarity and Copying

The plaintiff and his predecessors have used the mark since 1937 in conjunction with phonograph records, designed for use by teachers of dancing. Large sums of money were spent in advertising the mark which was used on phonograph records and on catalogs describing such records. The records were also advertised by means of exhibits at gatherings of dancing teachers. The plaintiff's label imitated a substantial portion of the mark,— that is, the dancer on the phonograph record. Even the feminine figure and the posture in which she stands are alike. The plaintiff's mark represents a typical ballet dancer with a ruffled skirt standing with both feet together *in the center* of the record with her arms stretched out at a wide angle above her head. The mark of the defendant also represents a dancer in a similar skirt. She stands with her feet wide-spread on the record, and has a hood rather than a hat on. But her arms are stretched out in the same manner and at the same angle as the dancer's on the plaintiff's mark. The average person looking at the two marks would see very little

4. We note this qualification merely because the Court of Appeals in Sunbeam Lighting Co. v. Sunbeam Corp., supra, and Sunbeam Furniture Corp. v. Sunbeam Corp., supra, seems to have restricted the remedy to *competitive fields only.*

distinction between them. See Gross v. Seligman, 2 Cir., 1914, 212 F. 930, 931–932.

The defendant is a late-comer in the field. He admits purchasing dance records from the plaintiff's predecessor as early as 1937 and 1938, and being familiar with the mark from that time on. He was then chiefly engaged in conducting a dancing school. He entered the field of record making for sale in 1946, using a "tap" label. He began using the infringing mark on letterheads, catalogues and labels, set between the words "Russell Records", in 1951:

There is evidence of the defendant's using on one side of his records, the red color which is characteristic of the plaintiff's label for the name, the dancing girl, and, indeed, all the writing on the label and to a great extent, on the advertisements. Even the phrase "ask your teacher" used in some of the advertising of the plaintiff is reproduced in some of the literature of the defendant. Although the defendant admitted that he never registered the mark, all the labels on his records issued to the present time, bear the designation "Trademark registered, U. S. Patent Office". In explanation, the defendant stated that the label was printed from a standard cut, and "would be used until destroyed". It may be true, as the defendant claims, that this is not a violation of law. But it is the type of deception which may be considered in determining whether there was fortuitous imitation or a calculated determination to appropriate and capitalize on the mark which over a long period of years had been the property of the plaintiff, and had become associated with his product. The absence of a showing of fraud or palming off "does not undermine the finding of unfair competition". Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386. Here there is proof of both. These and other facts in the record lead to the conclusion that the mark was used

"in a deliberate attempt to confuse and to mislead the public into believing that the product was sponsored or manufactured by respondent." MacSweeney Enterprises v. Tarantino, supra, 106 Cal.App.2d at page 514, 235 P.2d at page 272.

The facts examined in the light of the law of copyright show the chief element necessary to constitute infringement, *substantial copying*. See Heim v. Universal Pictures Co., Inc., 2 Cir., 1946, 154 F.2d 480, 487. And whether we deal with infringement of a copyright or of a trademark, the facts supporting infringement would also constitute unfair competition, although the method of computing damages might be different. See Brooks Bros. v. Brooks Clothing Co., supra, 60 F.Supp. at page 447. As said by the Supreme Court in Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 1938, 305 U.S. 315, 325, 59 S.Ct. 191, 196:

"The facts supporting a suit for infringement and one for unfair competition are substantially the same. They constitute and make plain the wrong complained of, the violation of the right to exclusive use."

See 15 U.S.C.A. § 1126(h) and (i); Jewel Tea Co. v. Kraus, 7 Cir., 1951, 187 F.2d 278, 282; Comment, Trade Name Infringement as Unfair Competition, 1952, 40 Cal. Law Rev. 571; Note, Trade-Marks, Unfair Competition and the Courts, 1953, Harvard L.Rev. 1094.

Judgment will, therefore, be for the plaintiff.