[Civ. No. 20957.   Second Dist., Div. One.   July 13, 1955.]

BEVERLY HILLS HOTEL CORPORATION (a Corporation), Appellant, v. HILTON HOTELS CORPORATION (a Corporation) et al., Respondents.

Freston & Files, Eugene D. Williams, Ralph E. Lewis and H. R. Kelly for Appellant.

G. Bentley Ryan and Sidney Traxler for Respondents.

DRAPEAU, J.—By this action, the Beverly Hills Hotel Corporation seeks to enjoin defendants from using the name

"The Beverly Hilton" for a new hotel nearing completion and located in the city of Beverly Hills.

Plaintiff owns and operates the Beverly Hills Hotel which was built and commenced operations in 1912. It is situate on an 11-acre tract in a residential district of the city of Beverly Hills. When it was opened the city had not been incorporated, and the area involved was located in a subdivision of the county of Los Angeles known as Beverly Hills. The city was incorporated in 1914.

The business of plaintiff is confined to this hotel which is a large one of the luxury type, including exclusive shops and bungalows located on the grounds. It has been operated for over 40 years as "The Beverly Hills Hotel" and also as "Beverly Hills Hotel and Bungalows."

In 1950, defendant Hilton Hotels Corporation purchased an 8½ acre tract of land about 1 mile distant from plaintiff's hotel: at the intersection of Wilshire and Santa Monica Boulevards in the city of Beverly Hills. This location is zoned for business.

About two years later, defendants announced that an ultra-modern, luxury hotel would be constructed at this location and that it would be called "The Beverly Hilton Hotel." Defendants inaugurated a general publicity and advertising campaign for the hotel under that name.

In November, 1952, Mr. Hernando Courtright, plaintiff's president, wrote to Mr. Conrad Hilton, president of defendant Hilton Hotels Corporation, stating: "In view of the similarity of sound and appearance with 'Beverly Hills' we earnestly request that you do not use this name." And it was suggested that the name be modified to "Hilton-Beverly," in order to obviate confusion.

During the ensuing correspondence, Mr. Hilton indicated some of the reasons for naming the new hotel "The Beverly Hilton Hotel," such as the policy of the corporation to name new hotels with a geographical designation preceding the name of Hilton. In August, 1953, Mr. Hilton advised plaintiff that it had been decided to drop the word "Hotel" and use the name "The Beverly Hilton," which "should eliminate any confusion."

At the time of trial, the Hilton Hotels Corporation operated 18 hotels throughout the United States and foreign countries. It also had six hotels under construction, including The Beverly Hilton.

The evidence presented consisted largely of affidavits filed

by both parties. By stipulation these were considered by the trial court in addition to oral testimony of two witnesses, one of whom was Mr. Hilton.

It was disclosed thereby that plaintiff had spent very large sums of money for local and national advertising and publicity. Also that construction material intended for defendants' hotel was mistakenly delivered to the Beverly Hills Hotel; and that newspapers had confused the names by referring to plaintiff's hotel, when intending to refer to defendants' hotel.

Defendant Hilton Hotels Corporation produced evidence to the effect that from 1947 through 1953, its total cost of advertising and related expenses was over five millions of dollars. Also, that it was its practice to name or change the names of hotels as they were acquired or constructed to include the name Hilton, for instance the Caribe Hilton in Puerto Rico and the Castellana Hilton in Madrid.

Pages of telephone directories were introduced showing many names of business enterprises which used the word "Beverly" or "Beverly Hills" as a part of their names. Among them were listed the names of two hotels located in Beverly Hills: Beverly Wilshire Hotel and Beverly Carleton Hotel.

At the conclusion of the trial, the court found, among other things, that the words "Beverly Hills" have been "since 1907, and still are, geographical; that the word 'Hotel' has been since long prior to the year 1912, and still is, descriptive of a certain type of business; that the words 'Beverly Hills Hotel' have been since the year 1912, and still are, geographical and descriptive of the place and nature of the business conducted by the plaintiff and its predecessors."

That the use of the name "Beverly Hills Hotel" by plaintiff had not resulted in said name acquiring any secondary meaning, or any special significance in the mind of the public generally or of the hotel going public in particular. And that the words "Beverly Hills Hotel" have "not acquired any meaning different from their original lexicographical meaning as a geographical and descriptive term. . . .

"That for twenty-seven (27) years there has existed in the City of Beverly Hills . . . two major hotels, one of which is that now owned by the plaintiff, and that there has existed substantial confusion in the public mind between said two hotels for said period of time; that in consequence neither plaintiff's hotel, nor the other major hotel, have achieved special significance in the public mind, and the name of neither

hotel has become invested with, or achieved secondary meaning.''

The court further found that there is no confusing similarity either in visual appearance or in sound between the name ''Beverly Hills Hotel'' and the name ''The Beverly Hilton''; and the use of the name ''The Beverly Hilton'' by defendants has not and will not tend to mislead and deceive, or result in a likelihood of confusion between the two hotels, in the mind of the public in general or the hotel going public in particular.

From the facts found the court concluded that the use of the name ''The Beverly Hilton'' does not infringe upon plaintiff's use of its name, or violate any of plaintiff's rights. That it does not constitute any unfair, fraudulent or improper use of said name, or violate any legally protectible interest of plaintiff in its name.

From the ensuing judgment denying the injunction, plaintiff appeals.

In seeking a reversal of the judgment, appellant relies upon the following propositions:

1. The holding that the names herein involved are not confusing cannot be supported.

2. The holding that appellant's name had no secondary meaning and could not have protection is clearly erroneous.

In connection with its first point, appellant urges that the finding of no confusion is directly in conflict with the evidence that instances of confusion had already occurred and would probably occur in the future.

In *Schwartz* v. *Slenderella Systems of Calif., Inc.*, 43 Cal.2d 107 [271 P.2d 857], appellant Schwartz was engaged in selling women's apparel in Los Angeles. He started to use the name ''Slenderella'' in Hollywood in 1939. (When respondent, who operated a chain of weight-reducing salons throughout the United States, commenced using the name ''Slenderella'' in Los Angeles, appellant sought to enjoin such use.

By reason of the similarity in names, Schwartz had received some misdirected mail and telephone calls intended for Slenderella Systems. Some of his customers had gone to respondent's salons in the belief that Schwartz operated women's clothing 'stores at those locations.

Appellant contended that ''To hold that confusion of source as to his products and the respondent's services will be unlikely . . . is to ignore the factual instances of confusion shown by the evidence. He asserts that the trial court has

negated the serious aspects of such confusion. Here the parties cater to the same class of the public, the argument continues, 'and it is not difficult to perceive that both appellant and respondent are competing for the same purchasing dollar.' "

In its opinion affirming the denial of an injunction, the Supreme Court stated at pages 112, 113 and 114, as follows:

"The senior appropriator may protect, by injunction, his trade name 'within the limits fixed by the likelihood of confusion of prospective purchasers.' (Rest. Torts, § 730, com. b; *MacSweeney Enterprises, Inc.* v. *Tarantino, supra,* at 106 Cal. App.2d [504] 512-513 [235 P.2d 266] ; *Winfield* v. *Charles, supra,* at 77 Cal.App.2d [64] 70-71 [175 P.2d 69].) Although many factors may enter into a determination of whether the use of a specific trade name is likely to result in a confusion of source, the question is primarily one of fact to be determined from all of the circumstances of a particular case. (*MacSweeney Enterprises, Inc.* v. *Tarantino, supra,* p. 513; *Winfield* v. *Charles, supra,* p. 71; *Pohl* v. *Anderson,* 13 Cal.App.2d 241, 242 [56 P.2d 992] ; see 63 C.J. Trade-Marks, Trade-Names and Unfair Competition, 414-418, §112.)

" . . . . . . . . . . . .

"Although factual instances of confusion may support a determination that confusion of the public is likely from the use of identical or similar trade names, they do not compel that conclusion as a matter of law.

" . . . . . . . . . . . .

"The situation of the parties is one from which differing conclusions reasonably may be drawn. Although a contrary determination might be supported by the evidence, the trial court has decided against the likelihood of confusion of source. When the entire record is considered, it fully supports that determination."

Also, as stated in *Fidelity Appraisal Co.* v. *Federal Appraisal Co.,* 217 Cal. 307, 317 [18 P.2d 950] : "The doctrine is so well settled by a multitude of cases that it is not necessary to cite specific cases, that words in common use are regarded as common property, and may be used by others in combination with other descriptive words, provided they are not so used in combination with other descriptive words, symbols or designs as to render it probable that they would mislead persons possessing ordinary powers of perception."

The trial judge correctly applied this standard in

350

coming to his ultimate conclusion that "persons possessing ordinary powers of perception" would not be confused between appellant's name: The Beverly Hills Hotel, and respondent's name: The Beverly Hilton.

As its second point on this appeal, appellant asserts as error the trial court's finding that its name has not acquired a secondary meaning and therefore is not entitled to protection.

In this connection, appellant argues that "Proof of secondary meaning consists in precisely the things which the court has here found and which are facts concerning the long operation, the advertising and the building up of a reputation under the name and the fact that the hotel has been and is popularly and generally known and referred to and identified by such name. Under such fact, appellant becomes entitled to the protection of its name as a matter of law."

The special significance of a designation or trade name customarily referred to as the "secondary meaning" is discussed in 3 Restatement, Torts, section 716(b) as follows:

"Whether or not a designation has acquired this special significance is a question of fact in each case. No particular period of use is required. In some cases the special significance is not acquired even after an extended period of use; in others it is acquired after a brief period. The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association. Long continued use of the designation is evidence from which this 'secondary meaning' may properly be inferred, but the inference is rebuttable."

As said in *Eastern-Columbia, Inc.* v. *Waldman*, 30 Cal.2d 268, 271 [181 P.2d 865]: "Where words have acquired . . . a fanciful meaning—a meaning that has no connection with their common meaning, it may be more properly said that such meaning is their primary meaning insofar as their use in business is concerned. Their common meaning has dropped into the background."

Also in *Katschinski* v. *Keller*, 49 Cal.App. 406, 408 [193 P. 587]: "When a geographical name is not used in a geographical sense, but is used in a fictitious sense merely to indicate ownership, independent of location, it may be a good trade-mark or trade name."

The outstanding examples of geographical names which

have acquired a secondary meaning are those of "Waltham" and "Elgin", both names of watches.

In *American Waltham Watch Co.* v. *United States Watch Co.*, 173 Mass. 85 [53 N.E. 141, 43 L.R.A. 826, 73 Am.St.Rep. 263], defendant was enjoined from use of the name Waltham. Plaintiff, a manufacturer of watches, had acquired a great reputation and had used the word originally in a geographical sense in connection with his watches. However, the word by long use has come to have a secondary meaning as a designation for watches which the public has become accustomed to associate with the name.

Likewise in *Elgin National Watch Co.* v. *Loveland* (Iowa), 132 F. 41, where the geographical name "Elgin" acquired a secondary meaning in the watch and jewelry trade, its original meaning dropping into the background.

In the circumstances presented by the instant cause, it is clear that the name Beverly Hills Hotel never acquired any special significance in the mind of the public apart from its original meaning as a geographical and descriptive term.

The judgment is affirmed.

White, P. J., concurred.

DORAN, J.—I dissent. I am in entire accord with appellant's contentions as to the facts as well as the law. Business ethics are precious. The violation of these ethics by such unprincipled and unwarranted conduct should not only be prevented but denounced. To hold otherwise only tends to encourage them. In my opinion the appellant's position should be upheld.

Appellant's petition for a hearing by the Supreme Court was denied September 8, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.